UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE:<br><br>**THERMOPRO, INC.**<br><br>         Debtor. | CASE NO. 25-53612-BEM<br><br>CHAPTER 11 (SUBCHAPTER V)<br><br>CONTESTED MATTER |
| **THERMOPRO, INC.,**<br><br> Movant,<br><br>v.<br><br>**The Piedmont Bank, United States Small Business Administration, Revenued LLC, Unique Funding Solutions LLC, Rapid Financial Services, LLC, and Maison Capital Group, Inc.,**<br><br> Respondents. | |

## EMERGENCY MOTION FOR AUTHORITY TO USE CASH COLLATERAL

ThermoPro, Inc. (the "**Debtor**") files this motion (the "**Motion**"), for the entry and approval of an order, pursuant to Sections 105, 361, and 363 of the Bankruptcy Code and Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure, authorizing the Debtor's use of cash collateral on an emergency basis to continue its operations in accordance with the proposed budget attached hereto as **Exhibit "A"** (the "**Budget**") and the Proposed Interim Order (as defined below) attached as **Exhibit "B"**, respectfully showing the Court as follows:

## BACKGROUND

1.

On April 1, 2025 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtor has continued in possession of its property and has operated and managed its affairs as a debtor-in-possession pursuant to the provisions of §§ 1107 and 1108 of the Bankruptcy Code. On April 2, 2025, Gary M. Murphy was appointed as the Chapter 11 Subchapter V Trustee.

2.

This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtor consents to the entry of final orders and judgments by the Bankruptcy Court.

3.

The Debtor is a plastics thermoforming manufacturer that specializes in heavy gauge vacuum forming, pressure forming, drape forming, plastic fabrication and secondary assembly. ThermoPro also produces high quality promotional prize games under the d/b/a Games People Play. The Debtor is owned 100% by Weigle Holdings, Inc. 401k Plan. Gregory Weigle ("**Mr. Weigle**") is the manager of the Debtor.

## PRE-PETITION FINANCING

4.

The Debtor is the borrower under a loan in the original principal amount of approximately $750,000.00, as evidenced by a Note and Security Deed in favor of The Piedmont Bank (the

"**Piedmont Loan**"). The Piedmont Loan was issued as part of a nationwide program administered by the United States Small Business Administration ("**SBA**"), utilizing federal funds to support small business owners. Upon information and belief, the outstanding principal balance of the Piedmont Loan is $236,000.00. The Piedmont Bank asserts a security interest in Mr. Weigle's personal residence through that certain Security Deed filed and recorded in Deed Book 1393, Page 187 of Oconee County Property Records.

5.

The Debtor is the borrower under a COVID-19 Economic Injury Disaster Loan with the SBA (the "**EIDL Loan**"). The SBA asserts a security interest in all of the Debtor's tangible and intangible assets. Upon information and belief, the outstanding principal balance of the EIDL Loan is $205,000.00.

6.

The Debtor is also indebted to Revenued LLC ("**Revenued**"), Unique Funding Solutions LLC ("**UFS**"), Rapid Financial Services, LLC ("**Rapid Finance**"), and Maison Capital Group, Inc. ("**Maison Capital**") (collectively, the "**Small Business Loans**"). The Small Business Loans were obtained to provide the Debtor with essential working capital to sustain operations while implementing internal restructuring efforts aimed at restoring profitability. These funds were intended to cover necessary business expenses, including payroll, inventory procurement, lease obligations, and other operational costs critical to maintaining the Debtor's ongoing business activities. Upon information and belief, the total principal amount of the Small Business Loans is $497,000.00.

7.

Certain revenue of the Debtor may constitute Cash Collateral as that term is defined in 11 U.S.C. Section 363 (the "**Cash Collateral**"). The Debtor believes that the Piedmont Loan, EIDL Loan, and Small Business Loans may assert an interest in the Cash Collateral. The Debtor is not aware of any other creditor asserting an interest in the Cash Collateral.

## RELIEF REQUESTED

8.

By this Motion, the Debtor seeks interim and final authorization to use Cash Collateral. The Debtor proposes to use Cash Collateral for general operational and administrative expenses as set forth in the Budget. The expenses incurred by the Debtor and for which Cash Collateral will be used will all be incurred in the normal and ordinary course of business. A proposed *Interim Order Authorizing Debtor to Use Cash Collateral and Granting Adequate Protection* (the "**Proposed Interim Order**") is attached hereto as Exhibit "B".

9.

Bankruptcy Code Section 363(c)(2) provides that a debtor-in-possession may not use cash collateral unless an entity that has an interest in such cash collateral consents or the Court approves the use, conditioned on provision of adequate protection. Section 363(o) provides that at a hearing on the use of cash collateral, the entity asserting an interest in the cash collateral has the burden of proof on the issue of the validity, priority, or extent of such interest, and the debtor-in-possession has the burden of proof on the issue of adequate protection. Rule 4001(b)(2) provides that the Court may not hold a final hearing on a motion to use cash collateral earlier than 14 days after service of the motion but may authorize the use of cash collateral prior to a final hearing as necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

10.

The Debtor requests authority to use Cash Collateral for the purpose of avoiding immediate and irreparable harm to the estate. The authority to continue using Cash Collateral should continue until the Court rules on the Debtor's request following a final hearing.

11.

The Debtor recognizes that the SBA, the Piedmont Bank, and the Small Business Loans (collectively, the "**Secured Creditors**") may be entitled to adequate protection of its interests in Cash Collateral (if any) within the meaning of 11 U.S.C. §§ 361 and 363. To the extent that any interest that the Secured Creditors may have in the Cash Collateral is diminished, the Debtor proposes to grant the Secured Creditors a replacement lien in post-petition collateral of the same kind, extent, and priority as the liens existing pre-petition (the "**Adequate Protection Lien**"), except that the Adequate Protection Lien will not extend to the proceeds of any avoidance actions received by the Debtor or the estate pursuant to chapter 5 of the Bankruptcy Code. Hence, the Secured Creditors' interests in the Debtor's Cash Collateral, to the extent they have any, are adequately protected.

12.

The Debtor further requests that the Court schedule a final hearing on Cash Collateral use, and following such hearing, enter a final order authorizing Cash Collateral use. At that hearing, the Court may consider any additional adequate protection requested by the Secured Creditors or agreed upon by the Debtor.

13.

If the Debtor is not allowed to use Cash Collateral, it will likely be forced to shut down without an orderly process, which will diminish the value of its assets. The Debtor requires the use of Cash Collateral to protect and preserve its value.

14.

Notwithstanding anything contained herein, the Debtor reserves the right to dispute the secured status of the Secured Creditors, collectively or individually, and the extent to which their claims may be secured, if at all, and the extent of any Adequate Protection Liens granted in any interim order or final order on this Motion.

**BASIS FOR RELIEF**

15.

Section 363(c)(2) of the Bankruptcy Code authorizes a debtor to use cash collateral if either (a) each entity with an interest in the cash collateral consents, or (b) the Court, after notice and a hearing, authorizes such use. 11 U.S.C. § 363(c)(2).

16.

Section 363(e) of the Bankruptcy Code conditions such use on the provision of "adequate protection" of the secured parties' interests. 11 U.S.C. § 363(e). The Bankruptcy Code does not explicitly define "adequate protection," but does provide a non-exclusive list of the means by which a debtor may provide adequate protection, including "other relief" resulting in the "indubitable equivalent" of the secured creditor's interest in such property. 11 U.S.C. § 361. What constitutes adequate protection must be evaluated on a case-by-case basis. *In re Swedeland Dev. Group Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) (*citing In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. l987)); *In re Martin*, 761 F.2d 472, 476 (8th Cir. 1985).

17.

The Bankruptcy Code expressly provides that "granting a replacement lien is a means of adequate protection". 11 U.S.C. § 361(2). Granting replacement liens provides ample and adequate protection of the secured creditor's interest in cash collateral. *See e.g. In re O'Connor*, 808 F.2d at 1393; *In re Dixie-Shamrock Oil & Gas. Inc.*, 39 B.R. 115, 118 (Bankr. M.D. Tenn. 1984).

18.

## CONCLUSION

**WHEREFORE**, the Debtor prays that this Court (i) grant it authority to use Cash Collateral.

Dated this 23rd April 2025.

*/s/ Charles Taylor Kogan*
**MICHAEL B. PUGH**
Georgia State Bar No. 150170
**CHARLES TAYLOR KOGAN**
Georgia State Bar No. 184723

For the firm of
THOMPSON, O'BRIEN, KAPPLER & NASUTI, P.C.
2 Sun Court, Suite 400
Peachtree Corners, Georgia 30092
Telephone: (770) 925-0111
E-mail: mpugh@tokn.com
*Proposed Attorneys for ThermoPro, Inc.*

**Thermopro Inc./Games People Play**

**Six Month Projected Cash Flow Budget**

|  |  | Month 1 | Month 2 | Month 3 | Month 4 | Month 5 | Month 6 |  |  |
|---|---|---|---|---|---|---|---|---|---|
| **Beginning AR** | $ 150,000 | $ 125,000 | $ 25,000 |  |  |  |  |  | $ 150,000 |
| **Revenue** |  | $ 125,000 | $ 125,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 |  | $ 565,000 |
| **Expenses** |  |  |  |  |  |  |  |  |  |
| Payroll & Benefits |  | $ 38,667 | $ 38,667 | $ 38,667 | $ 38,667 | $ 38,667 | $ 38,667 |  |  |
| Product expense |  | 31,250 | 31,250 | 25,000 | 25,000 | 25,000 | 25,000 |  |  |
| Sales & Marketing/G&A expense |  | 12,000 | 12,000 | 12,000 | 20,000 | 12,000 | 12,000 |  |  |
| Lease expense |  | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 |  |  |
| Moving expense |  | 10,000 | 10,000 |  |  |  |  |  |  |
| Total expenses |  | $ 99,917 | $ 99,917 | $ 83,667 | $ 91,667 | $ 83,667 | $ 83,667 |  |  |
| **AR Collected (85% following month)** |  | $ 143,750 | $ 150,000 | $ 121,250 | $ 100,000 | $ 100,000 | $ 100,000 |  | $ 715,000 |
| **Net Cash Flow** |  | $ 43,833 | $ 50,083 | $ 37,583 | $ 8,333 | $ 16,333 | $ 16,333 | $ 172,500 |  |
| **Net Profit** |  | $ 25,083 | $ 25,083 | $ 16,333 | $ 8,333 | $ 16,333 | $ 16,333 | 107,500 |  |
|  |  | 20% | 20% | 16% | 8% | 16% | 16% |  | $ - |



EXHIBIT A

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: <br><br> THERMOPRO, INC. <br><br> Debtor. | CASE NO. 25-53612-BEM <br><br> CHAPTER 11 (SUBCHAPTER V) <br><br> CONTESTED MATTER |
| THERMOPRO, INC., <br><br>  Movant, <br><br> v. <br><br> The Piedmont Bank, United States Small Business Administration, Revenued LLC, Unique Funding Solutions LLC, Rapid Financial Services, LLC, and Maison Capital Group, Inc., <br><br>  Respondents. | |

**INTERIM ORDER AUTHORIZING DEBTOR TO USE
<u>CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION</u>**



EXHIBIT B

This matter came before the Court on April 29, 2025, for hearing (the "**Preliminary Hearing**") on the ThermoPro, Inc. (the "**Debtor**") for Authority to Use Cash Collateral (the "**Cash Collateral Motion**").[1] Upon consideration of the Cash Collateral Motion, representations of counsel at the Preliminary Hearing, and all other matters of record, the Court hereby finds:

A. The Debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code on April 1, 2025 (the "**Petition Date**"). Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtor remains in possession of its assets and has continued the operation and management of the Practice in this case.

B. This Court has jurisdiction over the Cash Collateral Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2), involving matters under 11 U.S.C. §§ 361 and 363. Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

C. The Debtor asserts that it is a borrower on certain loans with the Piedmont Bank, United States Small Business Administration, Revenued LLC ("Revenued"), Unique Funding Solutions LLC ("UFS"), Rapid Financial Services, LLC ("Rapid Finance"), and Maison Capital Group, Inc. ("Maison Capital") (the "**Lenders**"), which assert security interests in the Debtor's personal property.

D. The revenue from the Debtor's business may constitute Cash Collateral as that term is defined in 11 U.S.C. Section 363 (the "**Cash Collateral**"). The Debtor believes that the Lenders may assert an interest in the Cash Collateral. The Debtor is not aware of any other creditor asserting an interest in the Cash Collateral.

E. The Debtor asserts that it generates substantially all of its revenue from the operation of the business.

---

[1] All capitalized terms not defined herein shall have the meanings ascribed to them in the Cash Collateral Motion.

F. The Debtor asserts that it has provided actual notice of the Cash Collateral Motion and the relief requested therein to the Lenders, to each of the Debtor's Twenty Largest Unsecured Creditors, and the United States Trustee.

G. The Debtor alleges that an immediate need exists for the Debtor to obtain use of the Cash Collateral to fund critical operations of the business. A schedule of the Debtor's revenues and cash requirements for the six (6) months following the Petition Date is set forth in the budget (the "**Budget**") attached to the Cash Collateral Motion as **Exhibit A**.

H. The Debtor alleges that in order to continue its operations and to preserve the value of its assets, it requires the use of the Cash Collateral in accordance with this Order.

I. Good cause has been shown for the entry of this Order and authorization for Debtor to use cash collateral pending the final hearing on the Cash Collateral Motion pursuant to Bankruptcy Rule 4001(b) (the "**Final Hearing**"). Among other things, entry of this Order will minimize the disruption of the business, will increase the possibility for a successful reorganization, and is in the best interests of the Debtor, its creditors, and other parties-in-interest.

Accordingly, it is hereby

**ORDERED, ADJUDGED AND DECREED:**

1. The Cash Collateral Motion is GRANTED on an interim basis. Subject to the terms hereof, this Order is effective immediately.

2. The Debtor is authorized to use Cash Collateral as set forth herein from the date of the entry of this Order through and including the date of the final hearing on the Cash Collateral Motion (the "**Interim Period**"). The Interim Period may be extended by further order of the Court.

3. To provide adequate protection for the Debtor's use of the Cash Collateral authorized hereunder, the Lenders and any other secured creditor, to the extent they hold valid liens,

security interests, or rights of setoff as of the Petition Date under applicable law, are hereby granted valid and properly-perfected liens (the "**Adequate Protection Liens**") on all property acquired by the Debtor after the Petition Date that is the same or similar nature, kind, or character as each party's respective pre-petition collateral, to the extent of any diminution in the value of the Cash Collateral, except that no such replacement liens shall attach to the proceeds of any avoidance actions under Chapter 5 of the Bankruptcy Code. The Adequate Protection Liens shall be deemed automatically valid and perfected upon entry of this Order.

4. Nothing herein shall be construed as a finding or conclusion that the Lenders or any other party holds a valid security interest, lien, or any interest in any of the Debtor's assets, and all parties' rights with respect to such issues are reserved.

5. This Order is entered without prejudice to the rights of either the Lenders or the Debtor to seek a modification of the terms hereof after notice and a hearing, and without prejudice to the right of Debtor to object to any claim.

6. **The Court shall hold a final hearing on the Cash Collateral Motion on April 29, 2025, at 11:00 a.m. in Courtroom 1402, Richard B. Russell Federal Building and U.S. Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303.**

7. This Order shall remain valid until such hearing, or any continuation thereof, has been held and a ruling entered.

8. Debtor's counsel shall serve a copy of this Order on all parties-in-interest within three (3) days of entry and promptly thereafter file a certificate of service evidencing the method and manner of service.

**[END OF DOCUMENT]**

Prepared and presented by:

Thompson, O'Brien, Kappler, & Nasuti, P.C.

*/s/ Charles Taylor Kogan*
**MICHAEL B. PUGH**
Georgia State Bar No. 150170
**CHARLES TAYLOR KOGAN**
Georgia State Bar No. 184723

For the firm of
THOMPSON, O'BRIEN, KAPPLER & NASUTI, P.C.
2 Sun Court, Suite 400
Peachtree Corners, Georgia 30092
Telephone: (770) 925-0111
E-mail: mpugh@tokn.com | tkogan@tokn.com
*Proposed Attorneys for ThermoPro, Inc.*

**Distribution List**

THOMPSON, O'BRIEN, KAPPLER & NASUTI, P.C.
2 Sun Court, Suite 400
Peachtree Corners, Georgia 30092

Office of the United States Trustee
Suite 362, Richard B. Russell Building
75 Ted Turner Drive, SW
Atlanta, Georgia 30303