

**IT IS ORDERED as set forth below:**

**Date: April 30, 2025**

_____

**Barbara Ellis-Monro**
**U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **IN RE:** | |
| **THERMOPRO, INC.** | **CASE NO. 25-53612-BEM** |
| Debtor. | **CHAPTER 11 (SUBCHAPTER V)** |
| | **CONTESTED MATTER** |
| **THERMOPRO, INC.,** | |
| Movant, | |
| v. | |
| **United Bank, successor-by-merger to The Piedmont Bank, United States Small Business Administration, Revenued LLC, Unique Funding Solutions LLC, Rapid Financial Services, LLC, and Maison Capital Group, Inc.,** | |
| Respondents | |

**INTERIM ORDER AUTHORIZING DEBTOR TO USE**
**CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION**

This matter came before the Court on April 29, 2025, for hearing (the "**Preliminary Hearing**") on the ThermoPro, Inc. (the "**Debtor**") for Authority to Use Cash Collateral (the "**Cash Collateral Motion**"). Upon consideration of the Cash Collateral Motion, representations of counsel at the Preliminary Hearing, and all other matters of record, the Court hereby finds:

A. The Debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code on April 1, 2025 (the "**Petition Date**"). Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtor remains in possession of its assets and has continued the operation and management of the Practice in this case.

B. This Court has jurisdiction over the Cash Collateral Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2), involving matters under 11 U.S.C. §§ 361 and 363. Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

C. The Debtor asserts that it is a borrower on certain loans with United Bank, successor-by-merger to The Piedmont Bank ("**United Bank**"), United States Small Business Administration, Revenued LLC ("**Revenued**"), Unique Funding Solutions LLC ("**UFS**"), Rapid Financial Services, LLC ("**Rapid Finance**"), and Maison Capital Group, Inc. ("**Maison Capital**") (the "**Lenders**"), which assert security interests in the Debtor's personal property.

D. The revenue from the Debtor's business may constitute Cash Collateral as that term is defined in 11 U.S.C. Section 363 (the "**Cash Collateral**"). The Debtor believes that the Lenders may assert an interest in the Cash Collateral. The Debtor is not aware of any other creditor asserting an interest in the Cash Collateral.

E. The Debtor asserts that it generates substantially all of its revenue from the operation of the business.

F.  The Debtor asserts that it has provided actual notice of the Cash Collateral Motion and the relief requested therein to the Lenders, to each of the Debtor's Twenty Largest Unsecured Creditors, and the United States Trustee.

G.  The Debtor alleges that an immediate need exists for the Debtor to obtain use of the Cash Collateral to fund critical operations of the business.

H.  The Debtor alleges that in order to continue its operations and to preserve the value of its assets, it requires the use of the Cash Collateral in accordance with this Order.

I.  Good cause has been shown for the entry of this Order and authorization for Debtor to use cash collateral pending the final hearing on the Cash Collateral Motion pursuant to Bankruptcy Rule 4001(b) (the "**Final Hearing**"). Among other things, entry of this Order will minimize the disruption of the business, will increase the possibility for a successful reorganization, and is in the best interests of the Debtor, its creditors, and other parties-in-interest.

Accordingly, it is hereby

**ORDERED, ADJUDGED AND DECREED:**

1. The Cash Collateral Motion is GRANTED on an interim basis. Subject to the terms hereof, this Order is effective immediately.

2. The Debtor is authorized to use Cash Collateral for ordinary and necessary business expenses consistent with the specific items and amounts set forth in the budget attached hereto as Exhibit "A" (the "**Budget**"). The Debtor may modify individual line items by no more than ten percent (10%) of the total amount of the Budget and may carry over any unused budgeted amounts. This authorization applies from the date of entry of this Order through and including the date of the final hearing on the Cash Collateral Motion (the "**Interim Period**"). The Interim Period may be extended by further order of the Court.

3. To provide adequate protection for the Debtor's use of the Cash Collateral pursuant to Sections 363(c)(2)(A) and 363(e) of the Bankruptcy Code, the Lenders and any other secured creditor, to the extent they hold valid liens, security interests, or rights of setoff as of the Petition Date under applicable law, are hereby granted valid and properly-perfected replacement liens (the "**Adequate Protection Liens**") on all property acquired by the Debtor after the Petition Date that is the same or similar nature, kind, or character as each party's respective pre-petition collateral, to the extent of any diminution in the value of the Cash Collateral, except that no such replacement liens shall attach to the proceeds of any avoidance actions under Chapter 5 of the Bankruptcy Code. The Adequate Protection Liens shall be deemed automatically valid and perfected upon entry of this Order.

4. As additional adequate protection for the interim use of cash collateral from the Petition Date to the date of this Order, the Debtor shall pay $1,800.00 to United Bank on, or before, the fifth (5th) day of each month thereafter during the Interim Period.

5. Furthermore, on or before 10th day of each month, the Debtor shall provide United Bank, the Subchapter V Trustee and the United States Trustee with an accounts receivable aged report, income statement, cash disbursement report and a budget-to-actual comparison report in the line item format of the Budget for the preceding month.

6. The Debtor shall continue to maintain and insure the collateral throughout the Interim Period.

7. Nothing herein shall be construed as a finding or conclusion that the Lenders or any other party holds a valid security interest, lien, or any interest in any of the Debtor's assets, and all parties' rights with respect to such issues are reserved.

8. This Order is entered without prejudice to the rights of either the Lenders or the Debtor to seek a modification of the terms hereof after notice and a hearing, and without prejudice to the right of Debtor to object to any claim.

9. It shall be a default hereunder for any one or more of the following to occur:

   (i)   The Debtor fails to comply with any of the terms or conditions of this Order;
   (ii)  The Debtor uses Cash Collateral other than as agreed in this Order;
   (iii) Removal of the Debtor-In-Possession under Section 1184;
   (iv)  Cancellation or lapse of the Debtor's insurance coverage;
   (v)   Cessation of business operations by Debtor; or
   (vi)  Conversion to chapter 7 or dismissal of this case.

10. Upon the service upon Debtor's counsel by any one of the Lenders of a written notice of any default, which shall be served upon the Debtor's counsel, the Subchapter V Trustee and the United States Trustee by electronic mail, the Debtor shall have a period of five (5) business days to cure such default. If the Debtor fails to cure the default within such cure period, the Debtor's ability to use Lenders' cash collateral shall be suspended pending further orders of this Court.

11. **The Court shall hold a final hearing on the Cash Collateral Motion on July 22, 2025, at 11:00 a.m. in Courtroom 1402, Richard B. Russell Federal Building and U.S. Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303.**

12. This Order shall remain valid until such hearing, or any continuation thereof, has been held and a ruling entered.

13. Debtor's counsel shall serve a copy of this Order on all parties-in-interest within three (3) days of entry and promptly thereafter file a certificate of service evidencing the method and manner of service.

                              **[END OF DOCUMENT]**

**Prepared and presented by:**

**Thompson, O'Brien, Kappler, & Nasuti, P.C.**

*/s/ Charles Taylor Kogan*
**MICHAEL B. PUGH**
Georgia State Bar No. 150170
**CHARLES TAYLOR KOGAN**
Georgia State Bar No. 184723

For the firm of
THOMPSON, O'BRIEN, KAPPLER & NASUTI, P.C.
2 Sun Court, Suite 400
Peachtree Corners, Georgia 30092
Telephone: (770) 925-0111
E-mail: mpugh@tokn.com | tkogan@tokn.com
*Proposed Attorneys for ThermoPro, Inc.*

**Distribution List**

THOMPSON, O'BRIEN, KAPPLER & NASUTI, P.C.
2 Sun Court, Suite 400
Peachtree Corners, Georgia 30092

Office of the United States Trustee
Suite 362, Richard B. Russell Building
75 Ted Turner Drive, SW
Atlanta, Georgia 30303

**Thermopro Inc./Games People Play**

**Projected Cash Flow Budget**

|  | April | May | June | July |  |
|---|---|---|---|---|---|
| **Beginning AR** | $ 150,000 | $ 125,000 | $ 25,000 |  | $ 150,000 |
| **Revenue** |  | $ 125,000 | $ 125,000 | $ 125,000 | $ 125,000 | $ 415,000 |
| **Expenses** |  |  |  |  |  |
| Payroll & Benefits | $ 46,500 | $ 46,500 | $ 46,500 | $ 46,500 |  |
| Product expense | 31,250 | 31,250 | 31,250 | 31,250 |  |
| Sales & Marketing/G&A expense | 12,000 | 12,000 | 12,000 | 20,000 |  |
| Lease expense |  |  | 8,000 | 8,000 |  |
| United Bank Adequate Protection | 1,800 | 1,800 | 1,800 | 1,800 |  |
| Retirement Plan Administrators | 10,000 | 6,000 | 6,000 | 6,000 |  |
| Moving expense |  | 10,000 | 10,000 |  |  |
| Total expenses | $ 101,550 | $ 107,550 | $ 115,550 | $ 113,550 |  |
| **AR Collected (85% following month)** | $ 143,750 | $ 150,000 | $ 125,000 | $ 125,000 | $ 543,750 |
| **Net Cash Flow** | $ 42,200 | $ 42,450 | $ 9,450 | $ 11,450 |  |
| **Net Profit** | $ 23,450 | $ 17,450 | $ 9,450 | $ 11,450 |  |
|  | 19% | 14% | 8% | 9% | $ 21,250 |



EXHIBIT
A