## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

IN RE:

**THERMOPRO, INC.** | **CASE NO. 25-53612-BEM**

**Debtor.** | **CHAPTER 11 (SUBCHAPTER V)**

## NOTICE OF ASSIGNMENT OF HEARING

      **PLEASE TAKE NOTICE** that ***THERMOPRO*** has filed a *Debtor's Emergency Motion for Entry of an Order (A) Authorizing Debor to Pay Prepetition Claim of Critical Vendor and (B) Granting Related Relief* and related papers with the Court seeking an order in the above-captioned case.

      **PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the *Debtor's Emergency Motion for Entry of an Order (A) Authorizing Debor to Pay Prepetition Claim of Critical Vendor and (B) Granting Related Relief* at *11:00 A.M.* on *June 3, 2025,* in the United States Courthouse, Courtroom, 1402, 75 Ted Turner Drive SW, Atlanta, GA 30303 which may be attended in person or via the Court's Virtual Hearing Room. You may join the Virtual Hearing Room through the "Dial-in and Virtual Bankruptcy Hearing Information" link at the top of the homepage of the Court's website, www.ganb.uscourts.gov, or the link on the judge's webpage, which can also be found on the Court's website. Please also review the "Hearing Information" tab on the judge's webpage for further information about the hearing. You should be prepared to appear at the hearing via video, but you may leave your camera in the off position until the Court instructs otherwise. Unrepresented persons who do not have video capability may use the telephone dial-in information on the judge's webpage.

      Your rights may be affected by the Court's ruling on these pleadings.  You should read these pleadings carefully and discuss them with your attorney. If you do not want the Court to grant the relief sought in these pleadings or if you want the Court to consider your views, then you and/or your attorney must attend the hearing.  You may also file a written response to the pleading with the Clerk, but you are not required to do so.  If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response.  Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing.  You must also mail a copy of your response to the undersigned at the address stated below.

      Dated this 13th day of May, 2025.

                     */s/ Michael B. Pugh*
                     **MICHAEL B. PUGH**
                     Georgia State Bar No. 150170
                     **CHARLES TAYLOR KOGAN**
                     Georgia State Bar No. 184723

For the firm of
THOMPSON, O'BRIEN, KAPPLER & NASUTI, P.C.
2 Sun Court, Suite 400
Peachtree Corners, Georgia 30092

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: | |
| | |
| **THERMOPRO, INC.** | **CASE NO. 25-53612-BEM** |
| | |
| Debtor. | **CHAPTER 11 (SUBCHAPTER V)** |

### DEBTOR'S EMERGENCY MOTION FOR ENTRY OF AN
### ORDER (A) AUTHORIZING DEBTOR TO PAY PREPETITION
### CLAIM OF CRITICAL VENDOR AND (B) GRANTING RELATED RELIEF

THERMOPRO, INC., (the "**Debtor**"), files this motion (the "**Motion**") for the entry of an order, substantially in the form attached hereto as **Exhibit "A"**, (a) authorizing, but not directing, the Debtor to pay in the ordinary course of business, certain prepetition amounts owing on account of (i) Critical Vendor Claims, (ii) Lien Claims, and (iii) 503(b)(9) Claims (each as defined below and collectively, the "**Specified Trade Claims**") (b) confirming the administrative expense priority of Outstanding Purchase Orders (as defined below) and authorizing the payment of such obligations in the ordinary course of business; and (c) granting related relief. In support of this Motion, the Debtor respectfully states as follows:

### JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the Northern District of Georgia (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtor confirms its consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief requested herein are sections 105(a) and 363 of Title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## BACKGROUND

3.      Michael L. Gould formed the Debtor in 1992 under the name Gould Plastics, Inc. In 2005, the Debtor became ThermoPro, Inc. On or about June 30, 2017, Gregory Weigle acquired an 83% ownership interest in the Debtor, and Tammy Shearer acquired a 17% ownership interest. The Debtor is a plastics thermoforming manufacturer that specializes in heavy gauge vacuum forming, pressure forming, drape forming, plastic fabrication and secondary assembly. The Debtor also produces high quality promotional prize games under the d/b/a Games People Play.

4.       In the years following the COVID-19 pandemic, the Debtor experienced a significant and sustained decline in revenue. The pandemic's economic impact disrupted the Debtor's business operations and its primary revenue streams. Most notably, post-pandemic, the Debtor's largest client reduced its business volume by a substantial margin, which resulted in a dramatic downturn in the Debtor's overall income. As a result, the thermoforming segment of the Debtor's operations began operating at a consistent loss and has become an ongoing financial burden on the company.

5.      In an effort to mitigate cash flow shortages and sustain day-to-day operations, the Debtor entered into several merchant cash advance agreements to supply and supplement liquidity. However, these agreements imposed onerous payment obligations, which, combined with the already diminished revenue, left the Debtor unable to meet its ordinary operating expenses and

financial commitments. The resulting strain on the Debtor's finances necessitated the need for relief under the Bankruptcy Code.

6.      Accordingly, on April 1, 2025 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11, Subchapter V, of the Bankruptcy Code. Since the Petition Date, the Debtor has remained in possession of its assets and has continued to manage its business as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. On April 2, 2025, Gary M. Murphy was appointed as the Chapter 11 Subchapter V Trustee. The Debtor is now focused on restructuring its obligations and emerging from bankruptcy with a sustainable operating model.

## SPECIFIED TRADE CLAIMS

7.      As described herein, the Debtor's industry of plastics thermoforming, with a focus on heavy gauge vacuum forming, pressure forming, drape forming, plastic fabrication, and secondary assembly, is a highly specialized trade. The Debtor's business requires seamless collaboration with third-party vendors, suppliers, service providers, and contractors that provide goods and services necessary for the continuation of the Debtor's operations due to the customized, industry-specific processes central to the Debtor's business. These goods and services include, among others, the supply of hardware, tools, industrial and maintenance, freight and logistics services provided, specialty conversion and industrial materials, and custom washers and gaskets. Maintaining relationships with these vendors and suppliers is essential to the Debtor's ability to uphold precise production schedules, manage cost efficiencies, and meet customer obligations. Without the relief requested in this Motion, the Debtor would face significant operational disruptions, resulting in lost revenue and irreparable harm to the Debtor's business and its creditors.

8.      The following table contains descriptions of the Debtor's Critical Vendors, Lien
Claimants, and 503(b)(9) Claimants (each as defined below), and the total estimated prepetition
amount outstanding on account of such claims. The Debtors do not seek to pay the total amounts
outstanding to all Critical Vendors, Lien Claimants, and 503(b)(9) Claimants. The Debtors intend to
pay the 503(b)(9) Claimants in accordance with the Bankruptcy Code in connection with a chapter
11 plan of liquidation.

| Category | Description of Services Provided | Estimated Prepetition Amount Due |
|---|---|---|
| **Critical Vendors** | Specialized suppliers of goods or services that are critical to maintain the Debtor's operations. | $350,101.35 |
| **Lien Claimants** | Suppliers of goods or services utilized on or provided to projects run by the Debtor that may assert mechanic's or other similar liens. | $0 |
| **§ 503(b)(9) Claimants** | Suppliers that provided goods to the Debtors that were received within 20 days before the Petition Date. | $10,921.26 |
| **Total Amount of Specified Trade Claims:** | | $361,022.61 |

9.      In the ordinary course of business, the Debtor obtains certain critical goods and
services from a limited number of highly specialized vendors and, in many instances, could not
operate without access to the goods and services provided by certain of these parties (collectively,
the "**Critical Vendors**"). The Debtors are not able to easily switch suppliers or subcontractors on
short notice and would face significant risks to their supply chain if prepetition amounts owed to the
Critical Vendors (collectively, the "**Critical Vendor Claims**") cannot be paid. The Debtors rely on
the Critical Vendors to provide a wide range of goods and services at competitive prices. Not only

do the Debtors rely heavily on the Critical Vendors to deliver current orders, but they also rely on

their relationships with Critical Vendors for future supply. More than merely the current orders would

be at risk if the Critical Vendors are not paid—the Debtors risk losing entire projects. Even where

alternative vendors may exist, the time and costs associated with switching from one vendor to

another would likely be significant and detrimental to the Debtor's operations. Any interruption to

the supply of products and services by the Critical Vendors could jeopardize the Debtor's ability to

complete current projects and cause material harm to the Debtor's business

10.     The Debtor seek authority to pay only Critical Vendors to the extent necessary to

avoid detrimental disruption to the Debtor's business, as determined in the Debtor's discretion in

the exercise of the Debtor's business judgment. In light of the limited funds the Debtor has

available for payment to Critical Vendors, not all vendors that fall into the categories described

above will be deemed Critical Vendors by the Debtor and Critical Vendors' prepetition claims will

not necessarily be paid in full pursuant to this Motion.

11.     Jeopardizing the Debtor's relationships with the Critical Vendors would impose a

severe strain on the Debtor's ongoing projects at this critical juncture and likely result in significant

revenue loss. The Critical Vendors are so essential to the Debtor's business that the lack of any of

their particular goods or services, even for a short duration, could significantly disrupt the Debtor's

ongoing projects and cause irreparable harm to the Debtor's businesses, goodwill, and market

share.

12.     In light of the above, the Debtor seeks entry of the Orders granting it authority to

make payments, in its sole discretion and business judgment, on account of the Critical Vendor

Claims in an amount not to exceed the aggregate Authorized Amounts, when combined with Lien

Claimants and 503(b)(9) Claimants, which amounts represents  the Debtor's best estimate as to

what amounts must and can be paid to the Critical Vendors to continue an uninterrupted supply of critical goods and services.

13.    The Debtors further request that the Court grant the Debtors the authority to allocate the foregoing amounts at their discretion, without prejudice to seek additional relief, and subject to an agreement to receive terms consistent with Customary Trade Terms (as defined below) from the Critical Vendors

14.    The Debtor has undertaken a process to identify the Critical Vendor using the following criteria: (i) whether a vendor is a sole-source or primary provider of services or products; (ii) whether certain specifications or volume requirements prevent the Debtor from obtaining a vendor's goods or services from alternative sources within a reasonable timeframe; and (iii) if a vendor is not a sole-source or primary provider of services or products, whether the Debtor can continue to operate in the ordinary course while a replacement vendor is secured. As a result of its review and evaluation, the Debtor identified its Critical Vendor.

## SECTION 503(B)(9) CLAIMS

15.    The Debtor received certain goods or materials from various vendors (collectively, the "**503(b)(9) Claimants**") within the twenty (20) day period before the Petition Date. Many of the Debtor's relationships with the 503(b)(9) Claimants are not governed by long-term contracts. Rather, the Debtor often obtains supplies on an order-by-order basis. As a result, a 503(b)(9) Claimant may refuse to supply new orders without payment of its prepetition claims.

16.    Amounts owed to the 503(b)(9) Claimants may be entitled to administrative priority under section 503(b)(9) of the Bankruptcy Code (each, a "**503(b)(9) Claim**"). The Debtor also believes certain 503(b)(9) Claimants could reduce the Debtor's existing trade credit or demand payment in cash on delivery, which would negatively impact the Debtor's liquidity.

17.     Although the Debtor intends to pay the majority of 503(b)(9) Claimants in connection with a Chapter 11 Subchapter V plan, the Debtor requests authority to allocate a portion of the Authorized Amounts to payment of certain 503(b)(9) Claimants, as determined in the Debtor's discretion. To the extent a portion of the Authorized Amounts are allocated to 503(b)(9) Claimants, the Debtor would pay such amounts in the ordinary course and not accelerate or modify existing payment terms with respect to the 503(b)(9) Claims.

**<u>CUSTOMARY TRADE TERMS</u>**

18.     In order to avoid disruption of the Debtor's operations and successfully implement the relief requested herein, the Debtor seeks authority to require the Specified Trade Claimants to provide favorable trade terms for the postpetition procurement of their goods and services. Specifically, the Debtor seeks authorization to condition payment of a Specified Trade Claim upon such Specified Trade Claimant's written agreement (a "**Trade Agreement**"), which may be obtained via email, to: continue providing goods and services to the Debtor in accordance with trade terms (including credit limits, discounts, pricing, timing of payments, availability, and other terms) at least as favorable to the Debtor as those in place during the twelve (12) months prior to the Petition Date, or as otherwise agreed by the Debtor in its reasonable business judgment in consultation with the DIP Secured Parties prior to agreeing to any such trade terms (the "**Customary Trade Terms**").

19.     The Trade Agreement will be a legally binding contractual arrangement between the parties governing the commercial trade relationship on the terms provided therein.

20.     The Debtor requests that if any party accepts payment pursuant to the relief requested by this Motion and thereafter does not continue to provide goods or services in accordance with the Customary Trade Terms or honor the Trade Agreement, then: (a) the Debtor

may take any and all appropriate steps to recover from such Specified Trade Claimant any payments made to it on account of its prepetition claim to the extent that such payments exceed the post-petition amounts then owing to such party; (b) upon recovery by the Debtor, any prepetition claim of such party shall be reinstated as if the payment on account thereof had not been made; and (c) if an outstanding post-petition balance is due from the Debtor to such party, (i) the Debtor may elect to recharacterize and apply any payment made pursuant to the relief requested by this Motion to such outstanding post-petition balance, and (ii) such party will be required to repay to the Debtor such paid amounts that exceed the post-petition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

## OUTSTANDING PURCHASE ORDERS

21.    Prior to the Petition Date and in the ordinary course of business, the Debtor may have ordered goods that will not be delivered until, or was delivered, after the Petition Date (the "**Outstanding Purchase Orders**"). To avoid the risk of becoming general unsecured creditors of the Debtor's estate with respect to such goods, certain suppliers may refuse to ship or transport such goods (or may recall such shipments) with respect to such Outstanding Purchase Orders unless the Debtor issues substitute purchase orders post-petition. To prevent any disruption to the Debtor's business operations, and given that goods delivered after the Petition Date are afforded administrative expense priority under section 503(b) of the Bankruptcy Code, the Debtor requests that the Court confirm the administrative expense priority status of the Outstanding Purchase Orders and authorize, but not direct, the Debtor to pay amounts due on account of Outstanding Purchase Orders in the ordinary course of business.

## BASIS FOR RELIEF

**I.    The Court Should Authorize the Payment of the Critical Vendor Claims.**

22.     Section 1107(a) of the Bankruptcy Code, which provides that a Debtor-in-possession shall perform all the functions and duties of a trustee, contains an implied duty that a Debtor-in-possession act as a fiduciary "to protect and preserve the estate, including an operating business's going-concern value," on behalf of the Debtor's creditors and other parties in interest. *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (*quoting In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)).

23.     Pursuant to section 105(a) of the Bankruptcy Code, "[t]he [C]ourt may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). The purpose of section 105(a) is to "assure the bankruptcy court's power to take whatever action is appropriate or necessary in aid of the exercise of its jurisdiction." COLLIER ON BANKRUPTCY ¶ 105.01 (15th ed. rev. 2007). Section 105(a) of the Bankruptcy Code thus empowers the Court to issue any order "necessary or appropriate" to allow a Debtor-in-possession to fulfill its duty to preserve the going-concern value of the business, including an order authorizing payment in full or in part of certain pre-petition claims of unsecured creditors prior to confirmation of a plan. *See CoServ*, 273 B.R. at 496–97; *see also In re Mirant Corp., et al.*, 296 B.R. 427, 429–30 (Bankr. N.D. Tex. 2003).

24.     Courts have long recognized that payment of some categories of pre-petition obligations outside the plan of reorganization is often necessary to realize the paramount goal of rehabilitation of the Debtor. *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175, 177 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the Debtor is not a novel concept.") (citation omitted); *see also In re Lehigh & New England Ry.*, 657 F.2d 570, 581 (3d Cir. 1981) (noting that the "doctrine of necessity" permits "immediate payment of claims of creditors where those creditors

will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid"); *In re Boston & ME. Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the Debtor's continued operation); *CoServ*, 273 B.R. at 500 (permitting chapter 11 debtor to pay the claims of a pre-petition general unsecured creditor in full because the "[d]ebtor very likely must deal with [such creditor] or risk harm to its estate or their going concern value").

25.     In addition, many courts have authorized chapter 11 debtors to make payment in full or in part of the pre-petition claims of nonpriority general unsecured creditors where necessary to preserve or enhance the value of the debtors' estates to the benefit of all creditors. *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821 (D. Del. 1999) (authorizing payment of certain critical trade vendors); *In re Tropical Sportswear Int'l Corp.*, 320 B.R. 15 (M.D. Fla. 2005) (authorizing payment of amounts owing to certain critical vendors); *Mirant Corp.*, 296 B.R. at 429–30 (granting chapter 11 Debtor authorization to pay pre-petition claims of certain classes of "critical" vendors); *CoServ,* 273 B.R. at 497 (noting that "it is only logical that the bankruptcy court be able to use section 105(a) of the Code to authorize satisfaction of the pre-petition claims in aid of preservation or enhancement of the estate").

26.     Courts in other jurisdictions routinely authorize debtors to pay critical vendor claims where essential to the debtor's continued operation. *See, e.g.*, *In re Syntax- Brillian Corp., et al.*, Case No. 08-11407 (BLS) (Bankr. D. Del. July 9, 2008) [Docket No. 50]; *In re JHT Holdings, Inc., et al.*, Case No. 08-11267 (BLS) (Bankr. D. Del. June 25, 2008) [Docket No. 48]; *In re American Home Mortgage Holdings, Inc.*, Case No. 07-11047 (CSS) (Bankr. D. Del. Aug. 7, 2007) [Docket No. 64]; *In re Werner Holding Co. (DE) Inc., et al.*, Case No. 06-10578 (KJC) (Bankr. D. Del. June

13, 2006) [Docket No. 54]; *In re Pliant Corp., et al.*, Case No. 06-10001 (MFW) (Bankr. D. Del.

Jan. 4, 2006) [Docket No. 26]; *In re Meridian Auto. Sys.-Composite Operations, et al.*, Case No.

05-11168 (MFW) (Bankr. D. Del. May 27, 2005) [Docket No. 183]; *In re Maxide Acquisitions, Inc.,*

*et al.*, Case No. 05-10429 (MFW) (Bankr. D. Del. Feb. 15, 2005) [Docket No. 33].

27.     It appears that payment of the Critical Vendor Claims is necessary for the Debtor's

reorganization, the Critical Vendors may otherwise refuse to do business with the Debtor, and other

creditors will be as well off (or perhaps better off) if the Critical Vendor Claims are paid. *See In re*

*News Publ'g Co.*, 488 B.R. 241, 244 (Bankr. N.D. Ga. 2013).

## II.    The Court Should Authorize the Payment of Claims Entitled to Priority Pursuant to Section 503(b)(9) of the Bankruptcy Code.

28.     Section 503(b)(9) of the Bankruptcy Code provides administrative priority for the

"value of any goods received by the debtor within twenty (20) before the date of

commencement of a case under this title in which goods have been sold to the debtor in the ordinary

course of such debtor's business." 11 U.S.C. § 503(b)(9).

29.     These claims must be paid in full for the Debtor to confirm a chapter 11 plan. *See*

11 U.S.C. § 1129(a)(9)(A). Consequently, payment of such claims now only provides such parties

with what they would be entitled to receive under a chapter 11 plan. All creditors will benefit from

the seamless transition of the Debtor's operations into bankruptcy.

30.     The Bankruptcy Code does not prohibit a debtor from paying such claims prior to

confirmation. The timing of such payments lies squarely within the Court's discretion. *See In re*

*ATP Oil & Gas Corp.*, 2014 Bankr. LEXIS 1050, at *28 (Bankr. S.D. Tex. Mar. 18, 2014) (stating

that the "timing of payment of administrative expenses is within the Court's discretion").

31.     The Debtor's ongoing ability to obtain goods as provided herein is key to their

survival and necessary to preserve the value of their estates. Absent payment of the 503(b)(9)

Claims at the outset of the Chapter 11 Cases—which merely accelerates the timing of payment and not the ultimate treatment of such claims—the Debtor could be denied access to the services and goods necessary to maintain the Debtor's business operations.

32.     Failure to honor these claims in the ordinary course of business may also cause the Debtor's vendor base to withhold support for the Debtor during the chapter 11 process. Such vendors could accelerate or eliminate favorable trade terms. Such costs and distractions could impair the Debtor's ability to stabilize their operations at this critical juncture to the detriment of all stakeholders.

### III.   The Court Should Confirm that Outstanding Purchase Orders Are Administrative Expense Priority Claims, and that Payment of Such Claims is Authorized.

33.     Pursuant to section 503(b)(1) of the Bankruptcy Code, obligations that arise in connection with the post-petition delivery of goods and services, including goods ordered prepetition, are administrative expense priority claims because they benefit the estate post-petition. *See* 11 U.S.C. § 503(b)(1)(A) (providing that the "actual [and] necessary costs and expenses of preserving the estate" are administrative expenses). Thus, granting the relief sought herein with respect to the Outstanding Purchase Orders will not afford such claimants any greater priority than they otherwise would have if the relief requested herein were not granted and will not prejudice any other party in interest.

34.     Absent such relief, however, the Debtor may be required to expend substantial time and effort reissuing the Outstanding Purchase Orders to provide certain suppliers with assurance of such administrative priority. The attendant disruption and delay to the continuous and timely flow of critical materials and other goods to the Debtor would force the Debtor to potentially halt operations, disrupt the Debtor's business, and lead to a loss of revenue, all to the detriment of the Debtor and their creditors.

35.     The Court should confirm the administrative expense priority status of the Outstanding Purchase Orders and should authorize the Debtor to pay the Outstanding Purchase Orders in the ordinary course of business.

36.     Based on the foregoing, the Debtor submits that the relief requested is necessary and appropriate, is in the best interests of its estate and creditors and should be granted.

37.     The Debtor further submits that because the relief requested in this motion is necessary to avoid immediate and irreparable harm to the Debtor for the reasons set forth herein, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

38.     The Debtor further seeks a waiver of any stay of the effectiveness of an order approving this motion. As set forth above, the relief requested herein is essential to prevent immediate and irreparable damage to the Debtor's operations and its efforts to pursue a reorganization.

39.     Accordingly, the relief requested herein is appropriate under the circumstances and under Bankruptcy Rules 6003 and 6004(h).

## <u>CONCLUSION</u>

**WHEREFORE**, the Debtor respectfully requests that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated this 13th day of May, 2025.

*/s/ Michael B. Pugh*
**MICHAEL B. PUGH**
Georgia State Bar No. 150170
**CHARLES TAYLOR KOGAN**
Georgia State Bar No. 184723

For the firm of
THOMPSON, O'BRIEN, KAPPLER & NASUTI, P.C.
2 Sun Court, Suite 400
Peachtree Corners, Georgia 30092

Telephone: (770) 925-0111
E-mail: mpugh@tokn.com; tkogan@tokn.com
*Proposed Attorneys for ThermoPro, Inc.*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

IN RE:

**THERMOPRO, INC.**                                      **CASE NO. 25-53612-BEM**

                                    **Debtor.**          **CHAPTER 11 (SUBCHAPTER V)**

### CERTIFICATE OF SERVICE

 This is to certify that I have on this day electronically filed the foregoing Debtor's Emergency Motion for Entry of an Order (A) Authorizing Debor to Pay Prepetition Claim of Critical Vendor and (B) Granting Related Relief (the "Motion") using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of and an accompanying link to the Notice and Application to the following parties who have appeared in this case under the Bankruptcy Court's Electronic Case Filing Program: *Alan Hinderleider for the Office of the United States Trustee*.

 I hereby certify that on the date indicated below I caused a true and correct copy of the Notice and Application to be served upon the parties listed on the attached mailing matrix via U.S. First Class Mail by placing same in a properly addressed envelope with adequate postage affixed thereon.

 Dated this 13th day of May, 2025.

                              */s/ Michael B. Pugh*
                              **MICHAEL B. PUGH**
                              Georgia State Bar No. 150170
                              **CHARLES TAYLOR KOGAN**
                              Georgia State Bar No. 184723

For the firm of
THOMPSON, O'BRIEN, KAPPLER & NASUTI, P.C.
2 Sun Court, Suite 400
Peachtree Corners, Georgia 30092
Telephone: (770) 925-0111
E-mail: mpugh@tokn.com; tkogan@tokn.com
*Proposed Attorneys for ThermoPro, Inc.*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: | |
| | |
| **THERMOPRO, INC.** | **CASE NO. 25-53612-BEM** |
| | |
| **Debtor.** | **CHAPTER 11 (SUBCHAPTER V)** |

### ORDER (A) AUTHORIZING DEBTOR TO PAY CERTAIN PREPETITION CLAIM OF CRITICAL VENDOR AND (B) GRANTING RELATED RELIEF

This matter came before the Court on, June 3, 2025 for hearing (the "**Hearing**") on the Motion of above-captioned Debtor and Debtor-in-possession (the "**Debtor**") for the entry of an order (the "**Order**"), (a) authorizing the Debtor to pay the Critical Vendor Claim, and (b) granting related relief (the "**Motion**") [Doc. 34]; all as more fully set forth in the Motion. Upon consideration of the Motion, representations of counsel at the Hearing, and all other matters of record; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that venue of the chapter 11 case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having determined that the relief requested in the Motion is in the best interests of the Debtor, its estate, creditors, and other parties-in-interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefore,

**IT IS HEREBY ORDERED THAT:**

1.     For the reasons set forth on the record at the Hearing, the Motion is GRANTED as set forth herein.[1]

---

[1] All capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.



EXHIBIT

A

2.       The Debtor is authorized, but not directed, in its sole discretion, to pay or otherwise satisfy the Critical Vendor Claim, in whole or in part, upon such terms and in the manner provided in this Order; provided that, if any Critical Vendor accepts payment hereunder and does not continue providing supplies, goods, or services to the Debtor in accordance with trade terms at least as favorable to the Debtor as those practices and programs (including credit limits, pricing, cash discounts, timing of payments, allowances, availability, and other programs) in place twelve months prior to the Petition Date, or such other trade terms that are acceptable to the Debtor (collectively, the "**Customary Trade Terms**"), then: (a) the Debtor may then take any and all appropriate steps to cause such Critical Vendor to repay payments made to it on account of its prepetition claim to the extent that such payments exceed the post-petition amounts then owing to such Critical Vendor; (b) upon recovery by the Debtor, any prepetition claim of such party shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding post-petition balance due from the Debtor to such party, the Debtor may elect to re-characterize and apply any payment made pursuant to the relief requested by the Motion to such outstanding post-petition balance and such supplier or vendor will be required to repay to the Debtor such paid amounts that exceed the post-petition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

3.       Nothing in the Motion or this Order shall impair the Debtor's right to contest the validity or amount of the Critical Vendor Claim, and all of the Debtor's rights with respect thereto are hereby reserved.

4.       Nothing in this Order or any action taken by the Debtor in furtherance of the implementation hereof shall be deemed to constitute an assumption or rejection of any executory

contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, and all of the Debtor's rights with respect to such matters are expressly reserved.

5.      Nothing in this Order nor the Debtor's payment of claims pursuant to this Order shall be construed as (a) an agreement or admission by the Debtor as to the validity of any claims on any grounds, (b) a waiver or impairment of any of the Debtor's rights to dispute any claims on any grounds, (c) a promise by the Debtor to pay any claims, or (d) an implication or admission by the Debtor that such claims are payable pursuant to this Order. Nothing herein shall acknowledge, grant, or otherwise permit any right of offset or recoupment by a non-Debtor with respect to any claims asserted against the Debtor.

6.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presentedfor payment, and all such banks and financial institutions are authorized to rely on the Debtor's designation of any particular check or electronic payment request as approved by this Order.

7.      The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

8.      Notice of the Motion as provided herein shall be deemed good and sufficient and such notice satisfies the requirements of Bankruptcy Rule 6004(a) and the Local Rules.

9.      Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

10.      The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

11.      The Court retains jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Order.

**[END OF DOCUMENT]**

Prepared and submitted by:

*/s/ Charles Taylor Kogan*
**MICHAEL B. PUGH**
Georgia State Bar No. 150170
**CHARLES TAYLOR KOGAN**
Georgia State Bar No. 184723
THOMPSON, O'BRIEN, KAPPLER & NASUTI, P.C.
2 Sun Court, Suite 400
Peachtree Corners, Georgia 30092
(770) 925-0111
mpugh@tokn.com
*Proposed Attorneys for ThermoPro, Inc.*

**Distribution List**

*See attached creditor matrix.*

Heather D. Brown
ADCO Plastics
Brown Law, LLC
138 Bulloch Avenue
Roswell, GA 30075

AAA Cooper
P.O. Box 935003
Atlanta, GA 31193-5003

ADCO Plastics
1256 Sandtown Road
Marietta, GA 30008-3817

AT&T
PO BOX 105251
Atlanta, GA 30348-5251

Aflac
PO Box 673025
Dallas, TX 75267-3025

All Service Delivery
6160 Purdue Drive SW
Atlanta, GA 30336-2824

Amstat Industries
1192 Heather Drive
Lake Zurich, IL 60047-6707

Eudora F. S. Arthur
Womble Bond Dickinson (US) LLP
555 Fayetteville St., Ste 1100
Raleigh, NC 27601-3034

Atlanta Digital Marketing Grp.
3221 Lynwood Dr. NE
Atlanta, GA 30319-2319

Atlanta Fire Extinguisher
P.O. Box 7830
Atlanta, GA 30357

Atlanta Metal Coating
3929 Oakcliff Industrial Ct
Atlanta, GA 30340-3408

Borke Mold Specialist
9541 GLADES DRIVE
Hamilton, OH 45011-9410

Heather D. Brown
Brown Law, LLC
138 Bulloch Avenue
Roswell, GA 30075-4420

Capital City
4955 Avalon Ridge Pkwy, Ste 100
Norcross, GA 30071-5741

Carolina Custom Finishing
2115 N. Fayetteville Street
Asheboro, NC 27203-3265

Castek Aluminum Inc.
527 Ternes Ave.
Elyria, OH 44035-6286

Champion Plastics
220 Clifton BLVD
Clifton, NJ 07011-3645

CitiBank
ATTN: Sunil Garg, CEO
388 Greenwich Street
New York, NY 10013-2362

Curbell Plastics Inc
14746 Collections Center Drive
Chicago, IL 60693-0147

Document Strategies Inc.
Attn: Richard W. Jones
750 Hammond Drive
Atlanta, GA 30328-5532

ECI Software Solutions
CORPORATION SERVICE COMPANY
1160 DUBLIN ROAD, SUITE 400
Columbus, OH 43215-1052

East West Manufacturing
4170 Ashford Dunwoody Rd Suite 560
Atlanta, GA 30319-1428

Ehrlich Pest Control
PO Box 13848
Reading, PA 19612-3848

Eudora F. S. Arthur
555 Fayetteville Street
Suite 1100
Raleigh, NC 27601-3034

Fed Ex
P.O. Box 660481
Dallas, TX 75266-0481

FedEx Corporate Services Inc
3965 Airways Blvd, Module G, 3rd Floor
Memphis, TN 38116-5017

FedEx Freight
DEPT CH PO BOX 10306
Palatine, IL 60055-0001

Fusion Cloud Services LLC
PO Box 31001-4169
Pasadena, CA 91110-0001

Futurex
P. O. 158
Bloomingdale, IN 47832-0158

GA Radioactive Materials Program
4244 internatial Pkwy Suite 120
Atlanta, GA 30354-3906

GAS SOUTH, LLC
ATTEN: Jamie Tiernan
788 Circle 75 Parkway SE, Suite 800
Atlanta, GA 30339-4692

Gas South
PO Box 530552
Atlanta, GA 30353-0552

Gibson Corrugated LLC
ATTEN: CHARLES DALE GIBSON
3060 EASON BLVD
Tupelo, MS 38801

Grainger Inc.
Dept. 844407940
Palatine, IL 60038-0001

Gregory Weigle
2292 Elder Mill Rd
Watkinsville, GA 30677-3357

Gwinnett County Tax Commissioner
75 Langley Drive
Lawrenceville, GA 30046-6935

HOME DEPOT CREDIT SERVICES
P O Box 9001043
Louisville, KY 40290-1043

Alan Hinderleider
Office of the United States Trustee
362 Richard B Russell Federal Building
75 Ted Turner Drive, S.W.
Atlanta, GA 30303-3315

Internal Revenue Service
P. O. Box 7346
Philadelphia, PA 19101-7346

JACKSON EMC
PO BOX 38
JEFFERSON, GA 30549-0038

Just Pallets and Crates
1400 Veterans Memorial Hwy Ste 134
Mableton, GA 30126-2952

KMT Systems / Mid South Securi
1732 SANDS PLACE
Marietta, GA 30067-9211

Laird Plastics Inc.
Attn: Kathy Dagen
5800 Campus Circle E 150B
Irving, TX 75063-2701

James S. Livermon III
Womble Bond Dickinson (US) LLP
Suite 1100
555 Fayetteville St.
Raleigh, NC 27601-3034

MCMaster Carr Supply
P O BOX 7690
Chicago, IL 60680-7690

MLC CAD Systems Inc
4625 W William Cannon Dr Bldg 5
Austin, TX 78749-2341

MSC Industrial Supply
PO Box 953635
Saint Louis, MO 63195-3635

Maison Capital Group, Inc.
4601 Sheridan Street
Suite 320
Hollywood , FL 33021-3433

Gary W. Marsh
Troutman Pepper Locke LLP
600 Peachtree Street, NE, Suite 3000
Atlanta, GA 30308-2305

McMaster-Carr Supply Company
600 N County Line Rd
Elmhurst, IL 60126-2081

Gary M. Murphey
Chapter 11 Subchapter V Trustee
Resurgence Financial Services, LLC
3330 Cumberland Blvd., Suite 500
Atlanta, GA 30339-5997

PARAFIN, INC.
ATTEN: 1505 Corporation INCORPORATING SE
301 HOWARD STREET SUITE 1500
San Francisco, CA 94105-6611

Pacifictech
22695 Old Canal Road
Yorba Linda, CA 92887-4601

Peachtree Packaging & Display
770 Marathon Pkwy
Lawrenceville, GA 30046-2800

Pitney Bowes
PO Box 981022
Boston, MA 02298-1022

Pitney Bowes Global Fin. Serv.
PO Box 371887
Pittsburgh, PA 15250-7887

Pitney Bowes Inc
27 Waterview Dr, 3rd Fl
Shelton CT 06484-4361

Primex Plastics
PO Box 854527
Minneapolis, MN 55485-4527

Purchase Power
PO Box 981026
Boston, MA 02298-1026

QIMA (US)
352 Sonwil Dr
Buffalo, NY 14225-5520

Quench USA Inc.
630 Allendale Rd Suite 200
King of Prussia, PA 19406-1695

REA UPO V Consolidate Collections
PO Box 843645
Dallas, TX 75284-3645

RETIREMENT PLAN ADMINISTRATORS, LLC
ATTEN: Michael Zahariades
780 Johnson Ferry Road, Suite 375
Atlanta, GA 30342-1406

REVENUED LLC
ATTEN: CORPORATION SERVICE COMPANY
1201 HAYS STREET
Tallahassee, FL 32301-2699

Rapid Finance
4500 East West Highway
6th Floor
Bethesda, MD 20814-3327

Dylan Franklin Rogers
Wiles & Wiles, LLP
800 Kennesaw Ave., Ste 400
Marietta, GA 30060-7946

Rowmark
PO Box 92933
Cleveland, OH 44194-0003

SBA
Office of General Counsel
409 3rd St. SW
Washington, DC 20416-0011

Savant CTS
301 Heritage Walk
Woodstock, GA 30188-6449

Savant LLC
1000 Parkwood Circle SE
Suite 220
ATLANTA, GA 30339-2123

Secretary of the Treasury
15th & Pennsylvania Avenue, NW
Washington, DC 20200

Sekisui Kydex
6685 Low Street
Bloomsburg, PA 17815-8613

Simona Boltaron
1 General Street
Newcomerstown, OH 43832-1230

Simona PMC
PO BOX 1123
Findlay, OH 45839-1123

Southeastern Freight Lines
P.O. Box 100104
Columbia, SC 29202-3104

(p)STEPHEN GOULD CORPORATION
ATTN STEPHANIE BOLICH
5 GIRALDA FARMS
MADISON NJ 07940-1027

TEACHERS INSURANCE & ANNUITY ASSOC. of A
Attn: Corporation Service Company, Regis
2 Sun Court, Suite 400
Peachtree Corners, GA 30092-2865

TForce Worldwide Inc.
PO Box 7410328
Chicago, IL 60674-0328

Tammy Shearer
1600 Cross Pointe Way,
Suite D
Duluth, GA 30097-4307

The Piedmont Bank
5100 Peachtree Parkway
Peachtree Corners , GA 30092-2525

ThermoPro, Inc.
1600 Cross Pointe Way
Suite D
Duluth, GA 30097-4307

Thermwood
904 Buffaloville Rd
Dale, IN 47523-9057

Thomco
1100 Northbrook Pkwy
Suwanee, GA 30024-2932

Trinity Packaging Supply
PO Box 22600
New York, NY 10087-2600

U. S. Securities and Exchange Commission
Office of Reorganization
Suite 900
950 East Paces Ferry Road, NE
Atlanta, GA 30326-1382

Uncapped Solutions LLC
8 The Green
STE B
Dover, DE 19901-3618

Unique Funding Solutions LLC
3rd Floor
381 Sunrise Highway
Lynbrook, NY 11563-3001

United Bank f/k/a The Piedmont Bank
c/o Eudora F. S. Arthur
555 Fayetteville Street
Suite 1100
Raleigh, NC 27601-3034

United States Trustee
362 Richard Russell Federal Building
75 Ted Turner Drive, SW
Atlanta, GA 30303-3315

VERITIV OPERATING COMPANY
P.O. BOX 57006
Los Angeles, CA 90074-7006

VISA U.S.A. INC.
Servisfirst Bank
2500 Woodcrest Pl
Birmingham, AL 35209-1374

Verizon Wireless
PO Box 660108
Dallas, TX 75266-0108

Washers USA
P.O. Box 1333
Black Mountain, NC 28711-1333

Waste Connections of Georgia
25 North Drive
Acworth, GA 30102-3156

John J. Wiles Sr.
Wiles & Wiles, LLP
800 Kennesaw Avenue NW
Suite 400
Marietta, GA 30060-7946