**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | |
| | |
| **THERMOPRO, INC.** | **CASE NO. 25-53612-BEM** |
| **Debtor.** | **CHAPTER 11 (SUBCHAPTER V)** |

**DEBTOR'S EMERGENCY MOTION FOR AUTHORITY TO SELL ASSETS**
**FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES**

**COMES NOW** ThermoPro, Inc., debtor and debtor-in-possession (the "**Debtor**") by and through its undersigned counsel, and hereby brings this Emergency Motion for Authority to Sell Assets Free and Clear of Liens, Claims, and Encumbrances (the "**Motion**")**,** respectfully showing the Court as follows:

**INTRODUCTION**

1. By this Motion the Debtor seeks the entry of one or more orders authorizing the Seller (as defined below) to sell the Assets (as defined below) and consummate such other related and necessary transactions in connection therewith as are summarized in this Motion and/or described in more detail in the Agreements (as defined below). Specifically, Debtor proposes to sell certain Assets through Plastics Machinery Group ("**PMG**"), acting as a broker, and to sell a separate Asset directly to KD Capital Equipment, LLC ("**KD Capital**"), as a purchaser or to any other purchaser approved by the Court, with such assets to be transferred and conveyed free and clear of all liens, claims and encumbrances with such liens to attach to the proceeds of the sale of the Assets.

2. To accomplish the proposed sale(s), the Debtor (the "**Seller**") has negotiated Listing Agreements (the "**Agreements**") attached hereto as <u>Exhibit "A"</u> and incorporated herein by reference to sell the certain pieces of equipment (the "**Assets**") used by the Seller in the operation of its business.

3. To accomplish the proposed sale(s), the Debtor (the "**Seller**") has negotiated a Purchase Order (the "**Purchase Order**") attached hereto as <u>Exhibit "B"</u> and incorporated herein by reference to sell the certain pieces of equipment (the "**Assets**") used by the Seller in the operation of its business.

4. In support of this Motion, the Debtor submits the Declaration of Todd Harrell (the "**PMG Marketing Declaration**"), attached hereto as <u>Exhibit "C"</u>.

## <u>JURISDICTION AND VENUE</u>

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this Bankruptcy Case and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

6. The statutory predicates for the relief requested in this Motion are Sections 105 and 363 of the Bankruptcy Code and Rule 6004 of the Bankruptcy Rules.

## <u>BACKGROUND</u>

7. On April 1, 2025 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under the provisions Chapter 11, Subchapter V of Title 11 of the Bankruptcy Code, in the Bankruptcy Court for the Northern District of Georgia. The Debtor continues to manage its assets and financial affairs as debtor-in-possession pursuant to §§ 1108 and 1184 of the Bankruptcy Code.

8. Debtor is a plastics thermoforming manufacturer that specializes in heavy gauge vacuum forming, pressure forming, drape forming, plastic fabrication and secondary assembly. Debtor also produces high quality promotional prize games under the d/b/a Games People Play.

9. The Debtor is owned 100% by Weigle Holdings, Inc. 401k Plan. Gregory Weigle ("**Mr. Weigle**") is the manager of the Debtor.

10. Debtor actively seeks to address the issues that led to the commencement of this Case by exploring viable strategic options, including identifying potential strategic partners and exploring options to reorganize and/or sell specific operations of the Debtor.

11. Debtor has concluded that it is in the best interests of the Debtor, its creditors, their employees, and other parties in interest to effectuate a sale of the Assets.

## **ASSETS TO BE SOLD**

12. On April 25, 2025, Debtor engaged PMG to market and locate a potential buyer for the Assets.

13. The Assets include the following pieces of equipment:

    a.  One (1) 1998 MAAC 4x6 3 Station Rotary, Serial # 03627.

    b.  One (1) 2005 5 Axis CNC Router, Twin 5'x5' Tables, Tool Changer, Serial # C67DT3440505.

    c.  One (1) 2006 Thermowood 5 Axis CNC Router, Twin 5'x10' Tables, Serial # C67DT3770506.

14. Debtor also seeks to sell one (1) 2005 AVT 3-R PAV Thermoformer, Serial No. 8076882, as-is directly to KD Capital for the total price of $30,000.00.

15. PMG shall receive compensation in the form of commission to be paid by the buyer of any piece of equipment.

16. The Debtor is the borrower under a loan in the original principal amount of approximately $750,000.00, as evidenced by a Note and Security Deed in favor of The Piedmont Bank (the "**Piedmont Loan**"). The Piedmont Loan was issued as part of a nationwide program administered by the United States Small Business Administration ("**SBA**"), utilizing federal funds to support small business owners.

17. Upon information and belief, the outstanding principal balance of the Piedmont Loan is $229,548.73, as evidenced by that certain proof of claim filed by United Bank f/k/a The Piedmont Bank (Claim No. 7). United Bank also asserts a security interest in Mr. Weigle's personal residence through that certain Security Deed filed and recorded in Deed Book 1393, Page 187 of Oconee County Property Records.

18. The Debtor is the borrower under a COVID-19 Economic Injury Disaster Loan with the SBA (the "**EIDL Loan**"). The SBA asserts a security interest in all of the Debtor's tangible and intangible assets. Upon information and belief, the outstanding principal balance of the EIDL Loan is $205,000.00.

19. The Debtor is also indebted to Revenued LLC ("**Revenued**"), Unique Funding Solutions LLC ("**UFS**"), Rapid Financial Services, LLC ("**Rapid Finance**"), and Maison Capital Group, Inc. ("**Maison Capital**") (collectively, the "**Small Business Loans**" and "**Small Business Lenders**"). Upon information and belief, the Small Business Lenders assert secured interests in the Debtor's tangible and intangible assets, as well as the Debtor's accounts receivable ("**A/R**"). Upon information and belief, the total principal amount of the Small Business Loans total $497,000.00.

20. The Debtor is not aware of any other creditors asserting liens on the Assets.

## RELIEF REQUESTED

21. The Debtor requests entry of an order substantially in the form of the proposed order attached hereto as Exhibit "D", authorizing the Debtor to sell the Assets on the terms set forth in the Agreements free and clear of liens, claims, and encumbrances, with all liens or security interests of any creditors attaching to the proceeds of the sale.

22. As shown in the Agreements attached hereto as Exhibit "A", the Debtor proposes list the Assets with PMG for a total amounting to $90,000.00. PMG will then sell the Assets to buyers who are not insiders of the Debtor.

23. KD Capital proposes to purchase its Asset for a total amounting to $30,000.00 (the "**Purchase Price**") with the following conditions:

    a.   Buyer is responsible for decommissioning and loading the Asset;

    b.   Asset is purchased subject to Bankruptcy Court approval;

    c.   Asset is purchased subject to site inspection and approval;

    d.   Seller agrees to send digital photos of Asset decommissioned and prep to KD Capital 24 hours prior to removal;

    e.   Seller agree to document and send to KD Capital digital photos of the loading, securing, and tarping of the Asset on the transportation truck; and

    f.   The Purchase Price is to be paid in full prior to removal.

## BASIS FOR RELIEF REQUESTED

### A. Approval of the Sale(s) is Warranted Under Section 363 of the Bankruptcy Code

24. Although Section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of the estate, bankruptcy courts have found that a debtor's sale or use of assets outside the ordinary course of business should be approved if the debtor can demonstrate a sound business justification for the proposed transaction. *See, e.g.*, *In re Eagle Picher Holdings, Inc.*, 2005 Bankr. LEXIS 2894, at ¶ 3 (Bankr. S.D. Ohio 2005); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983).

25. Under the business judgment rule the Debtor's judgment regarding the sale is entitled to respect and deference from the Court, so long as the burden of giving sound business reasons is met. *See In re Diplomat Constr., Inc.*, 481 B.R. 215, 218-19 (Bankr. N.D. Ga. 2012) (Diehl, J.).

26. Thus, if the debtor in possession demonstrates a sound business justification in favor of a proffered sale, the Court should approve it. *See In re Del. Hudson Ry. Co.*, 124 B.R. 169, 179 (Bankr. D. Del. 1991).

27. The Debtor has determined that the sale of the Assets pursuant to the Agreements will help maximize the value of the Debtor's bankruptcy estate for the benefit of creditors. The sale of the Assets at the proposed price will bring net proceeds of $90,000 into the estate. As such, the Debtor believes that it has demonstrated a sound business justification for the relief requested in the Motion.

**B.  The Sale(s) Should be Made Free and Clear of Liens**

28. Section 363(f) of the Bankruptcy Code permits a debtor to sell assets free and clear of all liens, claims, interests, and encumbrances (with any such liens, claims, interests, and encumbrances attaching to the net proceeds of the sale with the same rights and priorities therein as in the sold assets). Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of such interests in property if:

    a.  applicable non-bankruptcy law permits a sale of such property free and clear of such interest;

    b.  such entity consents;

    c.  such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

    d.  such interest is in bona fide dispute; or

    e.  such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Because Section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice as justification to approve the sale of the Assets free and clear of liens and other interests. *See* 11 U.S.C. § 363(f); *Mich. Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (Section 363(f) written in disjunctive; court may approve sale "free and clear" provided at least one of the subsections is met); *Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988).

29. The Debtor believes that United Bank, the SBA, and the Small Business Lenders (collectively, the "**Secured Creditors**") will consent to the proposed sale, thereby satisfying section 363(f)(2). In the event the Secured Creditors do not, or there exist other possible lienholders, a sale free and clear can proceed pursuant to Section 363(f)(5) of the Bankruptcy Code because the Secured Creditors and any other lienholders will be paid from the proceeds of the Sale and, therefore, can be compelled to accept a monetary satisfaction of their claims.

30. Accordingly, Section 363(f) authorizes the transfer and conveyance of the Assets free and clear any such liens, claims, interests, encumbrances, or liabilities.

**C. The Purchaser(s) of the Assets Should be Entitled to the Protections of Section 363(m)**

31. Section 363(m) of the Bankruptcy Code protects a good faith purchaser's interest in the assets purchased from the estate even if the sale is later reversed or modified on appeal. Specifically, Section 363(m) states:

> The reversal or modification on appeal of an authorization under [Section 363(b)] … does not affect the validity of a sale … to an entity that purchased … such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale … were stayed pending appeal.

11 U.S.C. § 363(m).

32. While the Bankruptcy Code does not define "good faith," courts have adopted various definitions which are basically similar. A good faith purchaser is one who purchases the assets for value, in good faith, and without notice of adverse claims. A purchaser is not acting in good faith if it engages in misconduct, which includes fraud, collusion between the purchaser and other bidders, or an attempt to take grossly unfair advantage of other bidders. *See SR Constr., Inc. v. Hall Palm Springs, L.L.C. (In re Palm Springs II, L.L.C.)*, 65 F.4th 752, 759 (5th Cir. 2023); *Mission Prod. Holdings, Inc. v. Old Cold LLC (In re Old Cold LLC)*, 879 F.3d 376, 384 (1st Cir. 2018); *Licensing by Paolo v. Sinatra (in Re Gucci)*, 126 F.3d 380, 390 (2d Cir. 1997); *In re Ewell*, 958 F.2d 276, 281 (9th Cir. 1992); *In re Abbotts Dairies, Inc.*, 788 F.2d 143, 149-50 (3d Cir. 1986); *In re Bel Air Assocs., Ltd.*, 706 F.2d 301, 305 n. 11 (10th Cir. 1983).

33.  As noted above, the sale of the Assets will be the product of extended good faith, arm's length negotiations conducted by PMG, acting solely as a broker, with prospective buyers. With respect to the Asset to be sold directly to KD Capital, such sale is likewise the result of good faith, arm's-length negotiations between the Debtor and KD Capital. The Debtor, therefore, requests that the Court make a finding that, upon the closing of any sale, the purchaser will have purchased the Assets in good faith within the meaning of Section 363(m) of the Bankruptcy Code.

**D.  Relief Under Bankruptcy Rule 6004(h) is Appropriate**

34. Rule 6004(h) of the Bankruptcy Rules provides that an "order authorizing the use, sale or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6004(h). The Debtor requests that the order granting the Motion be effective immediately by providing that the 14-day stays applicable under Rule 6004(h) of the Bankruptcy Rules be waived.

## <u>CONCLUSION</u>

**WHEREFORE**, Debtor requests that this Court grant this Motion and enter one or more

orders providing relief as requested herein and granting such other and further relief as may be just

and proper.


Dated this 11th day of June, 2025.

*/s/ Michael B. Pugh*

**MICHAEL B. PUGH**

Georgia State Bar No. 150170

**CHARLES TAYLOR KOGAN**

Georgia State Bar No. 184723

For the firm of

THOMPSON, O'BRIEN, KAPPLER & NASUTI, P.C.

2 Sun Court, Suite 400

Peachtree Corners, Georgia 30092

EXHIBIT "A"

THE LISTING AGREEMENTS

**Listing Agreement**

# PLASTICS MACHINERY GROUP

**5455 Perkins Road | Bedford Hts, Ohio 44146 | TEL: (440) 498-4000 | FAX: (440) 498-4001**

| Account Representative:<br>**Sam Cultrona** | Order Date:<br>**04-23-24** |
|---|---|

**ORDER ISSUED TO:**

| Company Name<br>**ThermoPro** | Telephone:<br>**678-475-1742** | Terms:<br>**100 % Prepaid prior to shipment** |
|---|---|---|
| Street Address<br>**1600 Cross Pointe Way Suite D** | Fax: | |

| City<br>**Duluth** | State<br>**GA** | Postal<br>**30097** | Ship Via:<br>**Best Way** | Freight is to be provided by Buyer.<br>**Yes** |
|---|---|---|---|---|

| Attention:<br>**Greg Weigle** | | | | |

| MACHINE ID# | QTY | DESCRIPTION | UNIT PRICE | TOTAL AMOUNT |
|---|---|---|---|---|
| Z96L65N | 1 | 1998 MAAC 4'x6' 3 Station Rotary Serial #03627<br><br>***Machines to include any manuals, schematics, spare parts, and accessories | $35,000.00 | $35,000.00 |

| Terms: **PMG to present any offers under the agreed upon price to ThermoPro for approval. Buyer responsible for rigging and shipping costs.** | Line Item Total | **$35,000.00** |
|---|---|---|

**Agreement to Sell**

The undersigned hereby agrees to sell the Equipment described above at the price or prices set forth above and in accordance with the terms and conditions attached hereto.

Name of Owner: ThermoPro

By: _(signature)_   Date: 4/25/25

| | TOTAL AMOUNT | **$35,000.00** |
|---|---|---|

| Listing Agreement |
|---|

# PLASTICS MACHINERY GROUP

**5455 Perkins Road | Bedford Hts, Ohio 44146 | TEL: (440) 498-4000 | FAX: (440) 498-4001**

| Account Representative:<br>**Sam Cultrona** | Order Date:<br>**04-23-24** |
|---|---|

## ORDER ISSUED TO:

| Company Name<br>**ThermoPro** | | Telephone:<br>**678-475-1742** | Terms:<br>**100 % Prepaid prior to shipment** |
|---|---|---|---|
| Street Address<br>**1600 Cross Pointe Way Suite D** | | Fax: | |
| City<br>**Duluth** | State<br>**GA** | Postal<br>**30097** | Ship Via:<br>**Best Way** | Freight is to be provided by Buyer.<br>**Yes** |
| Attention:<br>**Greg Weigle** | | | |

| MACHINE ID# | QTY | DESCRIPTION | UNIT PRICE | TOTAL AMOUNT |
|---|---|---|---|---|
| ZR8FX3K | 1 | 2005 5 Axis CNC Router, Twin 5'x5' Tables, Tool Changer, Serial Number: C67DT3440505<br><br>***Machines to include any manuals, schematics, spare parts, and accessories | $25,000.00 | $25,000.00 |

| Terms: PMG to present any offers under the agreed upon price to ThermoPro for approval. Buyer responsible for rigging and shipping costs. | Line Item Total | $25,000.00 |
|---|---|---|

| **Agreement to Sell**<br>The undersigned hereby agrees to sell the Equipment described above at the price or prices set forth above and in accordance with the terms and conditions attached hereto.<br>Name of Owner: **ThermoPro**<br>By: _[signature]_          Date: 4/25/25 | **TOTAL AMOUNT** | $25,000.00 |
|---|---|---|

**Listing Agreement**

# PLASTICS MACHINERY GROUP

**5455 Perkins Road | Bedford Hts, Ohio 44146 | TEL: (440) 498-4000 | FAX: (440) 498-4001**

| Account Representative:<br>**Sam Cultrona** | Order Date:<br>**04-23-25** |
|---|---|

## ORDER ISSUED TO:

| | | |
|---|---|---|
| Company Name<br>**ThermoPro** | Telephone:<br>**678-475-1742** | Terms:<br>**100 % Prepaid prior to shipment** |
| Street Address<br>**1600 Cross Pointe Way Suite D** | Fax: | |
| City<br>**Duluth** · State **GA** · Postal **30097** | Ship Via:<br>**Best Way** | Freight is to be provided by Buyer.<br>**Yes** |
| Attention:<br>**Greg Weigle** | | |

| MACHINE ID# | QTY | DESCRIPTION | UNIT PRICE | TOTAL AMOUNT |
|---|---|---|---|---|
| ZN5HT8A | 1 | 2006 Thermwood 5 Axis CNC Router, Twin 5'x10' Tables- Serial Number  C67DT3770506<br><br>***Machines to include any manuals, schematics, spare parts, and accessories | $30,000.00 | $30,000.00 |

| Terms: PMG to present any offers under the agreed upon price to ThermoPro for approval. Buyer responsible for rigging and shipping costs. | Line Item Total | $30,000.00 |
|---|---|---|

**Agreement to Sell**

The undersigned hereby agrees to sell the Equipment described above at the price or prices set forth above and in accordance with the terms and conditions attached hereto.

Name of Owner: **ThermoPro**

By: _(signature)_　　　　　　　　　　　　Date: 4/25/25

| TOTAL AMOUNT | $30,000.00 |
|---|---|

EXHIBIT "B"

KD Capital Purchase Order

**Listing Agreement**

# PLASTICS MACHINERY GROUP

**5455 Perkins Road | Bedford Hts, Ohio 44146 | TEL: (440) 498-4000 | FAX: (440) 498-4001**

| Account Representative:<br>**Don Kruschke** | Order Date:<br>**05-28-25** |
|---|---|

## ORDER ISSUED TO:

| Company Name<br>**ThermoPro** | | | Telephone:<br>**678-475-1742** | Terms:<br>**100 % Prepaid prior to shipment** |
|---|---|---|---|---|
| Street Address<br>**1600 Cross Pointe Way Suite D** | | | Fax: | |
| City<br>**Duluth** | State<br>**GA** | Postal<br>**30097** | Ship Via:<br>**Best Way** | Freight is to be provided by Buyer.<br>**Yes** |
| Attention:<br>**Greg Weigle** | | | | |

| MACHINE ID# | QTY | DESCRIPTION | UNIT PRICE | TOTAL AMOUNT |
|---|---|---|---|---|
| Q6UJ9A000QGJ | 1 | 2005 AVT 5'x8' Rotary Pressureformer  with vacuum pump, clamp frames<br><br>***Machines to include any manuals, schematics, spare parts, and accessories | $25,000.00 | $25,000.00 |

| Terms: **PMG to present any offers under the agreed upon price to ThermoPro for approval. Buyer responsible for rigging and shipping costs. Offer contingent upon buyer inspection.** | Line Item Total | **$25,000.00** |
|---|---|---|

| **Agreement to Sell**<br><br>The undersigned hereby agrees to sell the Equipment described above at the price or prices set forth above and in accordance with the terms and conditions attached hereto.<br><br>Name of Owner: **ThermoPro** | **TOTAL AMOUNT** | **$25,000.00** |
|---|---|---|

| By: | Date: |
|---|---|

TERMS AND CONDITIONS

GENERAL.  The term "*Agreement*" means these Terms and Conditions together with all documents specifically referenced herein and any written purchase order, contract or agreement which attaches, incorporates or otherwise references these Terms and Conditions.  Owner desires to sell the Equipment described on the front of this Agreement (the "*Equipment*") at the price or prices set forth therein (the "*Purchase Price*") and, upon the acceptance of this Agreement by Plastics Machinery Group, Inc. ("*Broker*"), Owner agrees to sell the Equipment to a buyer or buyers identified by Broker ("*Buyer*").  This agreement shall become a binding contract between the parties as of the date this Agreement is executed by Owner.  Owner agrees to sell the equipment to Buyer and not to remove the Equipment from the market, dispose of the Equipment in any manner, or sell the Equipment to any other party, including a party introduced to Owner by Broker, except in the manner expressly provided for in this Agreement.

Owner acknowledges and agrees that Broker does not represent itself to be the Buyer of the Equipment and that Owner is selling the Equipment directly to Buyer through Broker, pursuant to the escrow arrangements described herein, and that Broker is acting as an independent contractor.

Notwithstanding anything herein to the contrary, Owner shall not attempt to negotiate an increase in the Purchase Price of the Equipment directly with Buyer; and if the Equipment is not acquired by Buyer, Owner shall not sell or attempt to sell the Equipment, either directly or indirectly, to Buyer.  The aforesaid restrictions upon Owner shall continue notwithstanding the expiration of the Term (as defined herein).

TERM.  The term of this Agreement shall be for a period commencing as of the date this Agreement is executed by Owner and continuing for a period of twelve (12) months thereafter.

INSPECTION.  Broker may, at Buyer's request, arrange a time for Buyer to inspect the Equipment at reasonable times and places.  Owner shall cooperate with Broker in arranging for Buyer to inspect the Equipment.  In addition, Owner or Broker may arrange for video or photographs to be taken of the Equipment.

BINDING EFFECT.  Broker will notify Owner, as soon as practicable, whether or not Buyer intends to purchase the Equipment.  If Broker notifies Owner that Buyer intends to purchase the Equipment, Owner will be bound to sell the Equipment to Buyer at the Purchase Price and in accordance with the terms hereof.

DELIVERY.  Owner shall cooperate with Broker in arranging for the Equipment to be delivered to Buyer.  Owner agrees to maintain the Equipment in the same condition as it was during the aforementioned inspection, video or photographs, pending delivery to Buyer; and Owner further agrees to indemnify Broker should Buyer assert any claim concerning the condition of the Equipment. It is the responsibility of Owner to provide Broker with accurate shipping weights and dimensions. Any errors or omissions that result in added freight and rigging costs will be charged to Owner.

COMMUNICATIONS.  Owner agrees that it will not discuss the Purchase Price or any other terms hereof directly with Buyer or anyone other than Broker.

WARRANTIES.  Owner warrants that all Equipment will be (i) merchantable, free from defects in design, material and workmanship; (ii) as described and advertised and of good quality; (iii) free from all liens, encumbrances and any actual or claimed patent, copyright or trademark infringement; and (iv) in compliance with all applicable federal, state and local laws, regulations or orders, and agency or association standards or other standards applicable to the manufacture, labeling, transporting, licensing, approval or certification of the Equipment. These warranties are in addition to all other warranties, express, implied or statutory, which may be applicable.

PAYMENT TERMS.  All funds and documents for the purchase and sale of the Equipment shall be placed in escrow with Broker.  Owner will deliver into escrow, on the date scheduled for Buyer to take possession of the Equipment, a bill of sale in a form reasonably acceptable to Buyer, transferring the Equipment to Buyer free and clear of any liens or encumbrances.  Upon receipt of the bill of sale, Broker shall pay to Owner the Purchase Price and shall retain any balance remaining in the escrow account as compensation for its services.

FORCE MAJEURE.  Broker shall not be liable for any delay in performance or nonperformance due to war, fire, flood, acts of God, acts of third parties, acts of governmental authority or any agency or commission thereof, accident, strikes, and other causes beyond the reasonable control of Broker, including but not limited to those interfering with transportation.

LIMITATION OF LIABILITY.  Owner agrees and acknowledges that notwithstanding Broker's agreement to attempt to sell the Equipment, Broker shall in no way be liable to Owner for lost profits, lost opportunities or any other type of loss or damage, in the event that Broker is unable to sell the Equipment or Buyer is unable to consummate the acquisition of the Equipment.  Owner further agrees that Broker shall not be liable to Owner for any special, consequential, incidental punitive, exemplary, indirect or other damages under any circumstances, regardless of the cause thereof and regardless of the legal theory under which such damages are sought by Owner.

INDEMNIFICATION.  Owner agrees to indemnify, defend and hold harmless Broker, its officers, directors, employees, successors and assigns, from and against any and all losses, costs, damages and expenses arising directly or indirectly from (i) any act or omission of Owner; and/or (ii) Owner's breach of any representation, warranty, covenant, and/or obligation set forth herein.

CONFIDENTIALITY.  At all times, Owner will (i) maintain the confidentiality of any information disclosed by Broker whether or not identified as "confidential" upon disclosure ("*Confidential Information*"); (ii) not disclose or permit the disclosure of any Confidential Information to any person other than its employees for whom such knowledge is essential for performance of the Agreement; and (iii) not use

TERMS AND CONDITIONS

Confidential Information except for performance of the Agreement. Owner will immediately notify Broker of any disclosure of any Confidential Information that is not permitted by this Agreement and will be responsible for the disclosure or other misuse of Confidential Information. Broker makes no representation or warranty of any kind, express or implied, with respect to any Confidential Information. Broker may, at its sole discretion, elect at any time, by written notice to Owner, terminate Owner's further use of Confidential Information and Owner shall immediately return to Broker all Confidential Information and copies thereof and erase any digitally held Confidential Information. Termination by Broker will not affect Owner's continuing obligations in this Section.

CANCELLATION.  Broker will have the right to cancel this Agreement, in whole or in part, if the Equipment is, in Broker's judgment, non-conforming or defective or not delivered as scheduled, or if Owner fails to comply with or fulfill at any time any of the terms and conditions of this Agreement, or with Broker's shipping and billing instructions, or if, in Broker's opinion, the credit or ability of Owner to perform this Agreement becomes impaired, whereupon Broker will have the continuing right to obtain Equipment from another source, without prejudice to any other rights or remedies of Broker and in addition thereto.

INDEPENDENT CONTRACTOR/SAFETY. Broker is and will remain an independent contractor of Owner. No employee, agent, or representative of Broker or its subcontractors will be deemed to be an employee of Owner. Owner will provide all safeguards, and take all precautions, necessary in connection with the production and delivery of the Equipment sold hereunder to prevent the occurrence of any accident, injury, death, loss, or damage to any person or property, and will be solely responsible therefor. Owner warrants that all Equipment delivered hereunder will be

delivered in a safe, proper, and workmanlike manner and in compliance with all applicable codes, regulations, laws, standards, and specifications.

GOVERNING LAW; VENUE. This Agreement shall be governed by and construed in accordance with the laws of the State of Ohio, without regard to conflicts of law principles.  The parties agree that any lawsuit, action, claim, or legal proceeding involving, directly or indirectly, and arising out of or related to this agreement, shall be brought exclusively in the Cuyahoga County Court of Common Pleas or the U.S. District Court for the Northern District of Ohio.  The parties expressly consent to the jurisdiction and venue of these two forums and agree not to raise any objection to any lawsuit, action, claim, or legal proceeding brought in either of these two forums. **EACH PARTY HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT.**

ATTORNEYS' FEES. Reasonable attorneys' fees and costs will be awarded to the prevailing party in the event of any litigation directly or indirectly arising out of, under or in connection with this Agreement.

ENTIRE AGREEMENT.  This Agreement embodies the entire agreement and understanding of the parties hereto with respect to the subject matter hereof and supersedes all prior and contemporaneous letters, agreements, and understandings concerning the Equipment.  This Agreement may not be amended without the prior written consent of Broker.

[Remainder of Page Intentionally Blank]

Revised:  08/2015

EXHIBIT "C"

PMG MARKETING DECLARATION

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **IN RE:** | |
| | |
| **THERMOPRO, INC.** | **CASE NO. 25-53612-BEM** |
| **Debtor.** | **CHAPTER 11 (SUBCHAPTER V)** |

**DECLARATION OF TODD HARRELL IN SUPPORT OF APPLICATION TO**
**EMPLOY EQUIPMENT SALES BROKER FOR DEBTOR**

I, Todd Harrell, make the following declaration:

1.  I am over the age of 18 and I am a resident of the State of Ohio, I suffer no legal disabilities, and if called as a witness, I could testify completely to the facts set forth herein. I am a Thermoforming, Sheet Extrusion and Size Reduction Account Executive with Plastic Machinery Group ("**PMG**").

2.  This Declaration is prepared in support of the Application to Employ Equipment Sales Broker (the "**Application**") and all other purposes allowed by law.

3.  The Debtor anticipates that I will assist in the following: listing and marketing One (1) 1998 MAAC 4x6 3 Station Rotary, Serial # 03627, One (1) 2005 5 Axis CNC Router, Twin 5'x5' Tables, Tool Changer, Serial # C67DT3440505, One (1) 2006 Thermowood 5 Axis CNC Router, Twin 5'x10' Tables, Serial # C67DT3770506, One (1) 2005 AVT 5'x8' Rotary Pressureformer, Serial # Q6UJ9A000QGJ for sale, and various smaller items not

individually identified herein, identifying potential purchasers, assisting with related negotiations, and assisting the Debtor to consummate any purchase and sale agreement.

4.  I am well qualified to perform work of this nature.

5.  Neither I nor PMG represent, and have not represented, and will not represent any entity, other than the Debtor in matters related to the above-captioned chapter 11 case (the "**Case**").

6.  Neither I nor PMG have any connection with the Debtor, its creditors, or any other party in interest, or their respective attorneys and accountants.

7.  Neither I nor PMG have any connection with the United States Trustee for the Northern District of Georgia, or with anyone employed in the office of the United States Trustee for the Northern District of Georgia.

8.  Neither I nor PMG have any connection with any of the Bankruptcy Judges sitting in the United States Bankruptcy Court for the Northern District of Georgia.

9.  PMG and I are a "disinterested person," as defined by Section 101(14) of the Bankruptcy Code as:

    a.  not a creditor, an equity security holder, or an insider of the Debtor;

    b.  is not and was not, within 2 years before the date of the filing of the Debtor's petition in this Case, a director, officer, or employee of the Debtor; and

    c.  does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason.

10. The Debtor agreed, subject to approval by the Bankruptcy Court, to compensate me for my services in accordance with my standard practices. These practices may be adjusted from

time to time during the pendency of these cases. My compensation is to be paid by the buyer of any piece of equipment. If I find a buyer who then consummates a purchase and sale agreement of the Debtor's equipment, the compensation owed to me is equal to the purchase price of the equipment sold to the buyer less the agreed upon net proceeds owed to Debtor.

11.    The practice set forth above is the standard practice for work of this nature.

12.    Neither I nor PMG will not share payments received from this engagement with any other entity or individual.

13.    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED ON: May 30, 2025

Todd Harrell

EXHIBIT "D"

PROPOSED ORDER

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **IN RE:** | |
| | |
| **THERMOPRO, INC.** | **CASE NO. 25-53612-BEM** |
| | |
| **Debtor.** | **CHAPTER 11 (SUBCHAPTER V)** |

**[PROPOSED] ORDER GRANTING EMERGENCY MOTION FOR AUTHORITY TO SELL ASSETS**
**FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES**

Upon consideration of the Debtor's Emergency Motion for Authority to Sell Assets

Free and Clear of Liens, Claims, And Encumbrances (the "**Motion**") [Doc. 42][1], which requests,

among other things, entry of an order pursuant to sections 105 and 363 of the Bankruptcy Code

and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") approving

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

the sale of certain assets (the "**Sale**") detailed in the Motion; the Court having reviewed and considered the Motion, the presentations of counsel; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its bankruptcy estate, and all creditors and other parties in interest; and sufficient notice of the Motion having been given to all creditors and parties in interest; and after due deliberation thereon, and good cause appearing therefore, it is hereby **ORDERED** as follows:

1.      The Motion is **GRANTED** as set forth herein.

2.      The Agreements, including any amendments, supplements, and modifications thereto, and all of the terms and conditions therein, are hereby **APPROVED**.

3.      The Purchase Order, including any amendments, supplements, and modifications thereto, and all of the terms and conditions therein, is hereby **APPROVED**.

4.      The Debtor may sell the Assets free and clear of all liens, claims and encumbrances, because one or more of the standards set forth in Section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.

5.      Upon closing of the sale(s), all liens, claims, and encumbrances on the Assets shall attach to the proceeds of the sale(s) to the same extent, validity, and priority as they existed on the Petition Date.

6.      The Debtor is authorized to take all actions necessary to close the sale(s) and to comply with the Agreements.

7.      The Equipment Sales Brokers are authorized to pay all sales related expenses, including but not limited to, brokerage fees or commissions, or other associated itemized sales expenses.

8.      The Court shall retain jurisdiction to enforce and implement the terms and provisions of the Agreements and this Order.

Notwithstanding any rule to the contrary, the provisions of this Order shall be immediately effective and enforceable upon its entry.

**[END OF DOCUMENT]**

**Prepared and Presented by:**

**THOMPSON, O'BRIEN, KAPPLER & NASUTI, P.C.**

*/s/ Michael B. Pugh*
**MICHAEL B. PUGH**
Georgia State Bar No. 150170
**CHARLES TAYLOR KOGAN**
Georgia State Bar No. 184723
2 Sun Court, Suite 400
Peachtree Corners, Georgia 30092

**Distribution List**

*All parties on creditor matrix.*