**IT IS ORDERED as set forth below:**

**Date: June 27, 2025**



_____

**Barbara Ellis-Monro**
**U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **IN RE:** | |
| **THERMOPRO, INC.** | **CASE NO. 25-53612-BEM** |
| Debtor. | **CHAPTER 11 (SUBCHAPTER V)** |

**CONSENT ORDER GRANTING EMERGENCY MOTION FOR AUTHORITY TO SELL ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES**

Upon consideration of the Debtor's Emergency Motion for Authority to Sell Assets Free and Clear of Liens, Claims, And Encumbrances (the "**Motion**") [Doc. 42],[1] which requests, among other things, entry of an order pursuant to sections 105 and 363 of the Bankruptcy Code and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") approving the sale of certain assets (the "**Sale**") detailed in the Motion; the Court having reviewed and

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

considered the Motion, the presentations of counsel; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its bankruptcy estate, and all creditors and other parties in interest; and sufficient notice of the Motion having been given to all creditors and parties in interest; and after due deliberation thereon, and good cause appearing therefore, it is hereby **ORDERED** as follows:

1. The Motion is **GRANTED** as set forth herein.

2. The Agreements, including any amendments, supplements, and modifications thereto, and all of the terms and conditions therein, are hereby **APPROVED**.

3. The Debtor may employ PMG and KD Capital (the "**Brokers**") to market the following equipment (collectively, the "**Assets**"):

    i. One (1) 1998 MAAC 4x6 3 Station Rotary, Serial # 03627 (the "**Rotary**").

    ii. One (1) 2005 5 Axis CNC Router, Twin 5'x5' Tables, Tool Changer, Serial # C67DT3440505 (the "**Router**").

    iii. One (1) 2006 Thermowood 5 Axis CNC Router, Twin 5'x10' Tables, Serial # C67DT3770506 (the "**Thermowood**").

    iv. One (1) 2005 AVT 3-R PAV Thermoformer, Serial No. 8076882.(the "**AVT**").

4. Debtor may also market and identify prospective purchasers for various ancillary assets that are believed to have minimal or nominal value subject to the express consent of United Bank.

5. The Debtor may sell the Assets free and clear of all liens, claims and encumbrances, because one or more of the standards set forth in Section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.

6. The Debtor may sell the Thermowood free and clear of all liens, claims and encumbrances, to PMG for $30,000.00.

7. The Debtor may sell various ancillary assets minimal or nominal value free and clear of all liens, claims, and encumbrances subject to the express consent of United Bank.

8. Upon closing of the sale(s), all liens, claims, and encumbrances on the Assets and ancillary assets shall attach to the proceeds of the sale(s) with the same extent, validity, and priority as they existed on the Petition Date, and the proceeds shall be distributed in accordance with such priorities. The sale proceeds shall be distributed in accordance with such priorities; provided, however, that the first-position secured creditor, United Bank, as successor by merger to The Piedmont Bank, shall receive all net proceeds of the sale(s), up to the full amount of its allowed secured claim, before any distribution is made to any junior lienholders, administrative claimants, or unsecured creditors.

9. To the extent the proceeds are insufficient to satisfy United Bank's claim in full, United Bank shall retain its lien and security interest in any remaining collateral.

10. The Debtor is authorized to take all actions necessary to comply with the Agreements to market the Rotary, Router, and AVT for sale. Any sale of the Rotary, Router, and AVT shall be subject to the express consent of United Bank, which consent shall not be unreasonably withheld.

11. The Brokers' commission or compensation, if any, shall be the sole responsibility of the purchaser, and shall not be paid from the sale proceeds and shall not reduce, offset, or otherwise impair the amounts payable to any secured creditor from such proceeds.

12. The Brokers are authorized to pay all sales-related expenses, including but not limited to, brokerage fees or commissions, or other associated itemized sales expenses for any sale of the Assets other than to PMG, its successors, designees or assigns, or KD Capital, its successors, designees, or assigns.

13. The Debtor shall market the Assets for sale from the date of this Order through July 7, 2025 (the "**Marketing Period**").

14. If no binding agreement with a third-party purchaser is executed with respect to the Router by the conclusion of the Marketing Period, the Debtor is authorized to consummate the sale of the Router to PMG at the price of $10,000.00, subject to the express consent of United Bank, which consent shall not be unreasonably withheld, provided that no higher or better offer is received by the conclusion of the Marketing Period; provided, further, that at the conclusion of the Marketing Period, if the Router has not sold to a third-party, PMG provide United Bank with a detailed report of its marketing efforts undertaken by PMG to sell the Router and copies of marketing materials, all offers received and why such offers were not accepted or acceptable. Any such sale shall remain subject to the liens of secured creditors attaching to the proceeds in the same order of priority as existed on the Petition Date. The net proceeds of such sale shall be paid to United Bank and other lienholders in accordance with their respective priorities.

15. If no binding agreement with a third-party purchaser is executed with respect to the Router by the conclusion of the Marketing Period, the Debtor is authorized to consummate the sale of the AVT to PMG at the price of $25,000.00, subject to the express consent of United Bank, which consent shall not be unreasonably withheld, provided that no higher or better offer is received by the conclusion of the Marketing Period. Any such sale shall remain subject to the liens of secured creditors attaching to the proceeds in the same order of priority as existed on the Petition Date. The net proceeds of such sale shall be paid to United Bank and other lienholders in accordance with their respective priorities.

16. If the Debtor, United Bank, and either of the Brokers are unable to mutually agree upon a sale price of the Assets, the automatic stay shall be immediately modified to allow United Bank to recover possession of the Assets for liquidation.

17. The Debtor shall provide United Bank access to the Assets for the duration of the Marketing Period. Should a sale of any Asset not materialize or be approved by United Bank, Debtor shall provide United Bank reasonable access following the Marketing Period of the recovery of the Asset(s).

18. Debtor shall file a report of sale of auxiliary items or items of nominal value within fourteen (14) days of each such sale.

19. The Court shall retain jurisdiction to enforce and implement the terms and provisions of the Agreements and this Order.

Notwithstanding any rule to the contrary, the provisions of this Order shall be immediately effective and enforceable upon its entry.

**[END OF DOCUMENT]**

**Prepared and Presented by:**

**THOMPSON, O'BRIEN, KAPPLER & NASUTI, P.C.**

*/s/ Michael B. Pugh*
**MICHAEL B. PUGH**
Georgia State Bar No. 150170
**CHARLES TAYLOR KOGAN**
Georgia State Bar No. 184723
2 Sun Court, Suite 400
Peachtree Corners, Georgia 30092

Consented to by:

/s/ Arthur A. Ebbs
**ARTHUR A. EBBS**
WOMBLE BOND DICKINSON (US) LLP
State Bar No. 416181
1331 Spring Street NW
Suite 1400
Atlanta, Georgia 30309
Telephone: (404) 872-7000
Email: arthur.ebbs@wbd-us.com
Attorneys for United Bank

## **Distribution List**

*All parties on creditor matrix.*