**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **IN RE:**<br>**THERMOPRO, INC.**<br><br>              **Debtor.** | **CASE NO. 25-53612-BEM**<br>**CHAPTER 11 (SUBCHAPTER V)** |

**CHAPTER 11 PLAN OF REORGANIZATION**
**SUBMITTED BY THERMOPRO, INC.,**
**DEBTOR AND DEBTOR IN POSSESSION**

**NOVEMBER 5, 2025**

**Filed by:**

**THERMOPRO, INC.**
**Debtor and Debtor in Possession**

Attorney for Debtor:
Michael B. Pugh
THOMPSON, O'BRIEN, KAPPLER & NASUTI, P.C.
2 Sun Court, Suite 400
Peachtree Corners, Georgia 30092
Telephone: (770) 925-0111
E-mail: mpugh@tokn.com

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE:<br>**THERMOPRO, INC.**<br><br>**Debtor.** | **CASE NO. 25-53612-BEM**<br>**CHAPTER 11 (SUBCHAPTER V)** |

## CHAPTER 11 PLAN OF REORGANIZATION

COMES NOW, ThermoPro, Inc., as a debtor in possession and "Debtor" herein and proposes the following Chapter 11 Plan of Reorganization (hereinafter the "Plan"), pursuant to Chapter 11 of the United States Bankruptcy Code.

**ARTICLE I**
**SUBCHAPTER V INFORMATION AND DISCLOSURES**

1.1 **Subchapter V Plan of Reorganization.** Debtor's Plan is filed under Subchapter V of Chapter 11 of the Bankruptcy Code. Debtor has filed its Plan to reorganize its debts and continue the operation of its business.

1.2 **Background and History of Operations.** Debtor is a Georgia corporation and was formed on June 8, 1992. Debtor is a plastics thermoforming manufacturer that specializes in heavy gauge vacuum forming, pressure forming, drape forming, plastic fabrication and secondary assembly. Debtor also produces high quality promotional prize games under the d/b/a Games People Play. Debtor has continuously operated its business for the last thirty-three (33) years. Debtor currently has eleven (11) employees and serves approximately three hundred (300) customers. Weigle Holdings, Inc. 401k Plan is the sole owner of Debtor and Gregory Weigle ("Mr. Weigle") manages operations.

Debtor's financial issues began in the years following the COVID-19 pandemic when the Debtor experienced a significant and sustained decline in revenue. The pandemic's economic impact disrupted the Debtor's business operations and its primary revenue streams. Most notably, post-pandemic, the Debtor's largest client reduced its business volume by a substantial margin, which resulted in a dramatic downturn in the Debtor's overall income. As a result, the thermoforming segment of the Debtor's operations began operating at a consistent loss and has become an ongoing financial burden on the company.

In an effort to mitigate cash flow shortages and sustain day-to-day operations, the Debtor entered into several merchant cash advance agreements to supply and supplement liquidity. However, these agreements imposed onerous payment obligations, which, combined with the already diminished revenue, left the Debtor unable to meet its ordinary operating expenses and financial commitments. The resulting strain on the Debtor's finances necessitated the need for relief under the Bankruptcy Code.

Issues pertaining to the inability to timely pay debts provided a stress on business operations. The required payment terms on debts added to the stress when factored with the realistic business operations and sources of income. Debtor ultimately recognized a need to reorganize its business activities.

On April 1, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11, Subchapter V, of the Bankruptcy Code. Since the Petition Date, the Debtor has remained in possession of its assets and has continued to manage its business as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. On April 2, 2025, Gary M. Murphy was appointed as the Chapter 11 Subchapter V Trustee. The Debtor is now focused on restructuring its obligations and emerging from bankruptcy with a sustainable operating model.

1.3     **Liquidation Analysis and Description of Assets and Liabilities.** A review of Debtor's bankruptcy schedules indicates that a greater return to creditors would not be generated under Chapter 7 of the Bankruptcy Code or any type of liquidation scenario or bankruptcy. As reflected in bankruptcy schedules and claims filed by creditors, all of Debtor's assets are held as collateral for certain creditors. Many of Debtor's assets are claimed as collateral by several creditors. In fact, at least seven (7) creditors claim secured interests in Debtor's assets. If the case were converted to a case under Chapter 7 of the Bankruptcy Code, all assets would most likely be released to secured creditors and unsecured creditors would most likely receive no payment whatsoever on their claims. In addition, many of the creditors claiming secured interests in Debtor's cash assets including cash collateral would most likely receive no payments since the creditors holding first priority liens would need the cash assets toward payment of their claims. A copy of Debtor's liquidation analysis is attached as Exhibit "A" to this Plan and helps to explain the reality that will exist if assets are liquidated in a bankruptcy under Chapter 7 of the Bankruptcy Code. Accordingly, Debtor submits that the Plan satisfies the requirements of 11 U.S.C. §§ 1129(a)(7)(A) and 1191(a). Each holder of a claim will receive or retain under the Plan on account of such claim payment or property of a value, as of the Effective Date of the Plan, that is not less than the value that such holder of a claim would receive if the assets of Debtor were liquidated under chapter 7 of the Bankruptcy Code.

1.4     **Property and Claims.** The Plan provides for all property of Debtor and all debts and claims owed by Debtor.

1.5     **Standards Used for Approval and Confirmation of the Plan.** Debtor seeks confirmation and approval of the Plan with the consent of all Classes of creditors provided for by the Plan by a majority vote in number and two-thirds in the amount of Allowed Claims actually voting on the Plan. If successful in obtaining the consent of all Classes, the provisions of the Plan referencing and operating under § 1191(a) of the Bankruptcy Code will apply. If, however, Debtor does not obtain the consent of all Classes under the Plan, Debtor will request that the Court confirm the Plan under § 1191(b) of the Bankruptcy Code, and the provisions of the Plan referencing and operating under § 1191(b) will apply.

# ARTICLE II
## DEFINITIONS

Definitions for purposes of this Plan are as follows:

(1) **Administrative Claim**: A Claim for payment of an administrative expense of a kind specified in § 503(b) of the Bankruptcy Code and referred to in § 507(a)(2) of the Bankruptcy Code, including, without limitation: (a) the actual, necessary costs and expenses of preserving the estate and administering the Case that arose or accrued or that shall arise or accrue in the ordinary course of business during the period between the Petition Date and the Closing Date; and (b) any Professional Fee Claim.

(2) **Allowed Claims**: A debt (a) in respect to which a proof of claim was timely filed with the Bankruptcy Court within the applicable period of limitations fixed by Bankruptcy Rule 3003, or (b) as shown in the schedules prepared by Debtor and filed with the Court pursuant to Bankruptcy Rule 1007 and not listed as disputed, contingent or unliquidated as to the amount; and to which claim no objection to the allowance thereof has been filed as provided by Bankruptcy Rule 3007 or an order of the Court as to which objection has been determined by order or judgment, which is no longer subject to appeal. Debtor shall have standing to object to the validity or the amount of any claim, whether filed or unfiled, within a time limitation provided in the Plan or a time limitation to be hereinafter fixed by the confirmation order of the Bankruptcy Court.

(3) **Allowed Secured Claim**: An allowed claim of a creditor secured by a lien or security interest on property in which the Debtor has an interest, to the extent of the value of the interest of the holder of such allowed claim and the Debtor's interest in such property.

(4) **Allowed Unsecured Claims**: All allowed claims without interest from the filing date, including, without limitation, those arising as the result of the rejection of any executory contract and those arising as the result of a deficiency by the holder of an allowed secured claim, which are not secured by a lien or security interest in property in which the Debtor has an interest and which are not administrative expenses or priority claims.

(5) **Avoidance Actions**: Any claim or right arising out of or maintainable pursuant to §§ 510, 544, 545, 546, 547, 548, 549, 550 or 553 of the Bankruptcy Code or under any other similar applicable law, regardless of whether any action to assert such claim or right has been commenced or asserted prior to the Effective Date.

(6) **Bankruptcy Code**: Means Title 11 of the United States Code, as amended.

(7) **Bankruptcy Court**: United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, or, in the event the Court ceases to exercise jurisdiction over this Chapter 11 case, such Court or adjunct thereof that exercises jurisdiction over this Chapter 11 in lieu of the United States Bankruptcy Court for the Northern District of Georgia.

(8)     **Business Day**: Means a day on which commercial banks in Georgia are not required or authorized by law to be closed.

(9)     **Case:** Means Debtor's Chapter 11 bankruptcy case.

(10)    **Causes of Action:** All Avoidance Actions and any and all of Debtor's claims, actions, suits, accounts, agreements, promises, and rights to payment, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured, and whether asserted or asserted directly or derivatively, in law, equity, or otherwise.

(11)    **Claim:** Means a claim, as defined in § 101(5) of the Bankruptcy Code, against Debtor.

(12)    **Claims Bar Date:** (a) With respect to Administrative Claims (other than Professional Fee Claims) that accrued or were incurred during the period commencing after the Petition Date but prior to the Confirmation Date, or are otherwise allowable under 11 U.S.C. § 503(b)(9), any such Administrative Claim (other than Professional Fee Claims) must be filed within thirty (30) days from the date of entry of the order approving the motion to set the administrative claims bar date, said date being October 20, 2025 and (b) with respect to a General Unsecured Claim, June 10, 2025.

(13)    **Class:** Means a class of Claims as defined in this Plan.

(14)    **Confirmation Date:** The date upon which the Bankruptcy Court enters the Confirmation Order.

(15)    **Confirmation Hearing:** The duly noticed hearing held by the Bankruptcy Court pursuant to § 1128 of the Bankruptcy Code to consider confirmation of this Plan, as may be adjourned by the Court from time to time without further notice other than announcement of the adjourned date of the Confirmation Hearing at such hearing.

(16)    **Confirmation:** The entry of an order by the Bankruptcy Court confirming Debtor's Plan of Reorganization including any amendments.

(17)    **Confirmation Order:** The order of the Bankruptcy Court confirming the Plan.

(18)    **Court:** The Bankruptcy Court or any other Court of the United States with authority over the Case or, with respect to any particular proceeding arising under or related to the Case, any other Court that is exercising jurisdiction over such proceeding.

(19)    **Debtor:** ThermoPro, Inc.

(20)    **Designated Notice:** Means notice and an opportunity for a hearing as described in § 102(a) of the Bankruptcy Code. Following entry of the Confirmation Order, the time for the giving of any notice shall be reduced to twenty (20) days, and notice shall be limited to the Notice

Parties. When a party gives Designated Notice and no written objection is served within 20 Business Days of service, the party to whom Designated Notice is given shall be presumed to have consented to or have no opposition to the relief or request identified in the Designated Notice. If a timely objection is served, the Court will hold a hearing on the objection on no less than five (5) days' notice.

(21)    **Disputed Claim:** A claim, or any portion thereof, that is the subject of an objection timely filed in the Bankruptcy Court and which objection is not withdrawn, settled, or overruled by a final order of the Bankruptcy Court.

(22)    **Distribution:** Means a distribution of Cash to a Claimant on account of an Allowed Claim pursuant to the terms of this Plan.

(23)    **Distribution Date:** Any date on which distributions of payments are to be made from a distribution fund or otherwise.

(24)    **Effective date:** April 1, 2026.

(25)    **Estate:** The bankruptcy estate of the Debtor created on the filing date pursuant to 11 U.S.C. Section 541 of the Bankruptcy Code.

(26)    **Final Decree:** The Final Order of the Bankruptcy Court closing the Case.

(27)    **Final Distribution:** The Distribution by Debtor or the reorganized Debtor that satisfies all Allowed Claims to the extent provided in accordance with the Plan.

(28)    **Final Distribution Date:** The date on which the Final Distribution is made.

(29)    **Final Order:** means an order or judgment of a Court (including one approving a settlement) entered on the docket which: (a) shall not have been reversed, stayed, modified or amended and as to which the time to appeal from, or to seek review or rehearing of, shall have expired and as to which no appeal or petition for review, rehearing or certiorari is pending; or (b) if appealed from, shall have been affirmed (or the appeal dismissed) and the time to appeal from such affirmance or to seek review or rehearing thereof shall have expired, or no further hearing, appeal or petition for certiorari may be taken or granted.

(30)    **General Unsecured Claim:** A Claim against the Debtor arising on or before the Petition Date that is not an Allowed Secured Claim, Administrative Claim, Priority Tax Claim, or a priority claim as defined by Section 507 of the Bankruptcy Code.

(31)    **Lien:** The charge against or interest in property to secure payment of a debt or performance of an obligation including any mortgage, pledge, charge, security interest, encumbrance or other legally cognizable security device of any kind affecting or attaching to property of the estate.

(32)    **Notice Parties:** Means (i) with respect to notices served Debtor, the U.S. Trustee, the Subchapter V Trustee (unless terminated in accordance with § 1183(c) of the Bankruptcy Code), and all other parties in interest who, after entry of the Confirmation Order, have filed a request for notice with the Clerk of the Court and have served same on Debtor's counsel, or (ii) with respect to notices served by a party other than Debtor, Debtor and its counsel, the U.S. Trustee, the Subchapter V Trustee (unless terminated in accordance with § 1183(c) of the Bankruptcy Code), and all other parties in interest who, after entry of the Confirmation Order, have filed a request for notice with the Clerk of the Court and have served same on Debtor's counsel.

(33)    **Person:** An individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, limited liability limited partnership, trust, estate, unincorporated organization, governmental unit (as defined in Section 101(27) of the Bankruptcy Code), or other entity.

(34)    **Petition Date:** Means April 1, 2025.

(35)    **Plan:** Debtor's Chapter 11 Plan of Reorganization, including amendments and modifications.

(36)    **Post-confirmation Administrative Claims:** Costs and expenses incurred after the entry of the confirmation order in connection with the administration and consummation of the Plan by professionals employed by the Debtor, including, without limitation, expenses incurred in the continued reorganization of the Debtor's assets, fees of the Debtor's attorneys and accountants incurred in reviewing claims against the Debtor, filing objections to claims, prosecuting claims and causes of action on behalf of the estate, and expenses resulting from administering the case and liquidating assets.

(37)    **Post-Confirmation Professional Fee Claims**: Post-Confirmation Administrative Claims for compensation earned, and reimbursement of expenses incurred, by attorneys, accountants, or other professionals employed by the Reorganized Debtor.

(38)    **Pro Rata Share:** Means, with respect to any distribution to a Class under this Plan, as of any particular Distribution Date, proportionate sharing pursuant to which the ratio of the cumulative amount of all funds distributed on account of an Allowed Claim to the amount of such Allowed Claim is the same as the ratio of the cumulative amount distributed to such Class to the total amount of all Allowed Claims and Disputed Claims classified into such Class.

(39)    **Professional Fee Claims:** Claims for compensation earned and reimbursement of expenses of attorneys, accountants, or other professionals employed by Debtor, with approval of the Bankruptcy Court.

(40)    **Retained Actions:** All Causes of Action, claims, rights of action, suits, and proceedings, whether in law or in equity, whether known or unknown, which Debtor or the Estate may hold against any Person, including, without limitation, (i) Causes of Action and claims

brought before the Effective Date; (ii) Causes of Actions and claims against any Person for a failure to pay for services or products provided or rendered by Debtor, (iii) Causes of Action and claims seeking recovery of Debtor's accounts receivable or other receivables or rights to payment created or arising in the course of Debtor's business or otherwise owed to Debtor, including without limitation, claims for overpayments made by or on behalf of Debtor and tax refunds, and (iv) Avoidance Actions.

(41)    **Reorganized Debtor:** Debtor from and after entry of the Confirmation Order.

(42)    **Subchapter V Trustee:** The duly appointed trustee pursuant to § 1183(a) of the Bankruptcy Code.

(43)    **Unclaimed Property:** Any funds payable to Holders of Claims that are unclaimed. Unclaimed Property shall include (a) checks (and the funds represented thereby) which have been returned as undeliverable without a proper forwarding address, (b) funds for checks which have not been presented and paid within ninety (90) days of their issuance, and (c) checks (and the funds represented thereby) which were not mailed or delivered because of the absence of a proper address to mail or deliver such property.

(44)    **Unpaid Claims Reserve:** The reserve created pursuant to Article V, Section 5.07 of the Plan.

**ARTICLE III**
**TREATMENT OF UNCLASSIFIED CLAIMS;**
**EXECUTORY CONTRACTS;**
**AND LEASES**

Pursuant to §§ 1122 and 1123 of the Bankruptcy Code, certain Claims are unclassified. Unclassified claims are treated as follows:

3.1    **Administrative Claims.** Allowed Administrative Claims are not classified and are treated as follows:

(a)    **Administrative Claims.** Holders of Allowed Administrative Claims other than Professional Fee Claims will be fully paid in cash as soon as possible after the later of the Effective Date or the date such claim becomes an Allowed Administrative Claim, unless otherwise agreed to by the Holder of the claim. Other than Professional Fee Claims, which may be filed, if necessary, at any time prior to entry of a Final Decree, any request for payment of an Administrative Claim arising before the Confirmation Date must be filed no later than October 20, 2025 (the "Administrative Claims Bar Date"), or such Administrative Claim will be forever barred. Debtor has the right to object to the allowance of any Administrative Claim.

(b)    **Professional Fee Claims.** Professional Fee Claims for the period prior to the entry of the Confirmation Order shall be paid in the amount awarded pursuant to orders of the Court and shall be paid in full in cash as soon as practicable after the later of the Effective Date

or such date the claim becomes an Allowed Administrative claim, unless otherwise agreed to by the holder of the claim. Debtor's counsel currently holds a retainer of $12,287.50 and anticipates a Professional Fee Claim in the approximate amount of $65,000.00 through confirmation of the Plan.

(c) **Post Confirmation Professional Fees.** Debtor may pay Professional Fees incurred after Confirmation of the Plan without Court approval, other than the fees of the Subchapter V Trustee, which must be approved by the Court.

(d) **Compensation of the Subchapter V Trustee.** The Subchapter V Trustee shall be entitled to apply for reasonable compensation for fees and expenses under 11 U.S.C. §§ 330 and 503(b)(3). Upon approval of fees and expenses by the Court, the Subchapter V Trustee shall be entitled to allowed fees and reimbursements of expenses, and Debtor shall pay any unpaid allowed compensation in full on the day after the order allowing the compensation becomes a Final Order, or upon such other terms as may be agreed to by Debtor and the Subchapter V Trustee.

3.2    **Priority Tax Claims.** Debtor is a C Corporation and is separately taxable on its income. Accordingly, the Debtor is responsible for any corporate income tax obligations arising during the case. At this time, the Debtor does not anticipate any priority tax claims.

## ARTICLE IV
## CLASSIFICATION OF CLAIMS AND INTERESTS

Claims are treated as set forth below. A Claim shall be deemed classified in a particular Class only to the extent that the Claim is included within the description of that Class, and the Claim is not included in any other Class. To the extent that any portion or remainder of the Claim qualifies within the description of a different Class, the portion of the Claim shall be classified in the different Class. A Claim shall be classified in a particular Class only to the extent it is an Allowed Claim in that Class and has not been satisfied, disallowed, or extinguished as of the Effective Date of the Plan. The treatment of each Claim provided in this Article IV shall constitute complete satisfaction, release, and discharge of such Claim.

4.1    **Class 1 (Claim of United Bank f/k/a The Piedmont Bank)** – This Class consists of the claim of United Bank, which asserts a first priority UCC Lien on all of Debtor's assets. The creditor has filed Proof of Claim No. 7 for a debt owed of $229,548.73. After post-petition payments from the sale of assets, the debt owed is $140,127.67 as of September 9, 2025. This creditor's claim accrues interest at the contractual rate of 9.50%. This Claim shall be paid in monthly installments, beginning with eighteen (18) installments of $1,800.00 each, followed by forty-two (42) installments of $2,000.00, followed by installments of $2,500.00 until Class 1 is paid in full. The first installment shall be due on the first day of December 2026, the ninth (9th) month following the Effective Date of the Plan, and subsequent installments shall be due on the first day of each month thereafter until the Claim is satisfied in full. Any payments made post-petition and pre-confirmation shall be applied to the debt pursuant to the underlying loan documents.

Debtor may prepay all or any portion of the Class 1 Claim at any time after the Effective Date of the Plan without premium, penalty, or additional fees. Any prepayment shall be applied first to accrued interest and then to principal. Prepayment shall not affect the creditor's lien priority, which shall remain in full force and effect until the Claim is paid in full pursuant to the terms of the Plan.

In the event of default under the Plan, the creditor may provide Designated Notice of such default to the Notice Parties, and if such default is not cured within fourteen (14) Business Days of the service of the Designated Notice, the creditor shall be authorized to exercise its rights under the loan documents and applicable state law. The creditor shall retain its Lien in the same priority and to the extent the Lien was valid and enforceable on the Petition Date until the claim is paid in full pursuant to the terms of this Plan. Once the claim is paid in full pursuant to the terms of the Plan, the creditor shall release its Lien to Debtor.

This Class is impaired and entitled to vote on the Plan.

Nothing in this Plan shall constitute an admission as to the nature, the validity, or the amount of the claim. Debtor reserves the right to object to all claims.

4.2    **Class 2 (Claim of the U.S. Small Business Administration)** – This class consists of the claim of the United States Small Business Administration which asserts a second priority blanket UCC Lien on all of Debtor's assets. The creditor has filed Proof of Claim No. 28 for a debt owed of $203,734.41. This Claim shall be paid in sixty-seven (67) installments of $4,211.26 each until Class 2 is paid in full. The first installment shall be due on the first day December 2031, the sixty-ninth (69th) month following the Effective Date of the Plan, and subsequent installments shall be due on the first day of each month thereafter until the Claim is satisfied in full. Any payments made post-petition and pre-confirmation shall be applied to the debt pursuant to the underlying loan documents. In the event of default under the Plan, the creditor may provide Designated Notice of such default to the Notice Parties, and if such default is not cured within fourteen (14) Business Days of the service of the Designated Notice, the creditor shall be authorized to exercise its rights under the loan documents and applicable state law. The creditor shall retain its Lien in the same priority and to the extent the Lien was valid and enforceable on the Petition Date until the claim is paid in full pursuant to the terms of this Plan. Once the claim is paid in full pursuant to the terms of the Plan, the creditor shall release its Lien to Debtor.

Debtor may prepay all or any portion of the Class 2 Claim at any time after the Effective Date of the Plan without premium, penalty, or additional fees. Any prepayment shall be applied first to accrued interest and then to principal. Prepayment shall not affect the creditor's lien priority, which shall remain in full force and effect until the Claim is paid in full pursuant to the terms of the Plan.

This Class is impaired and entitled to vote on the Plan.

Nothing in this Plan shall constitute an admission as to the nature, the validity, or the amount of the claim. Debtor reserves the right to object to all claims.

4.3    **Class 3 (Claim of Revenued, LLC)**  This class consists of the claim of Revenued, LLC which holds, or may hold at best, third priority UCC Lien on all of Debtor's accounts receivables. The creditor has filed Proof of Claim No. 18 for a debt owed of $79,971.28. This creditor's claim will accrue interest at the contractual rate of 0.0% as referenced in Proof of Claim No. 18. This Claim shall be treated as a Class 10 general unsecured claim because the value of the creditor's pre-petition collateral is $0.00. Any payments made post-petition and pre-confirmation shall be applied to the debt pursuant to the underlying loan documents. In the event of default under the Plan, the creditor may provide Designated Notice of such default to the Notice Parties, and if such default is not cured within fourteen (14) Business Days of the service of the Designated Notice, the creditor shall be authorized to exercise its rights under the loan documents and applicable state law. The creditor shall retain its Lien in the same priority and to the extent the Lien was valid and enforceable on the Petition Date until the claim is paid in full pursuant to the terms of this Plan. Once the claim is paid in full pursuant to the terms of the Plan, the creditor shall release its Lien to Debtor.

Debtor may prepay all or any portion of the Class 3 Claim at any time after the Effective Date of the Plan without premium, penalty, or additional fees. Any prepayment shall be applied first to accrued interest and then to principal. Prepayment shall not affect the creditor's lien priority, which shall remain in full force and effect until the Claim is paid in full pursuant to the terms of the Plan.

This Class is impaired and entitled to vote on the Plan.

Nothing in this Plan shall constitute an admission as to the nature, the validity, or the amount of the claim. Debtor reserves the right to object to all claims.

4.4    **Class 4 (Claim of Rapid Finance, LLC)**  This class consists of the claim of Revenued, LLC which holds, or may hold at best, a fourth priority lien on all of Debtor's accounts receivables. This claim is junior on substantially all of Debtor's assets. Debtor has filed Proof of Claim No. 31 on behalf of the creditor for a debt owed of $132,000.00. This creditor's claim will accrue interest at the rate of 0.0%. This Claim shall be treated as a Class 10 general unsecured claim because the value of the creditor's pre-petition collateral is $0.00. No interest shall accrue on the claim post-petition. Any payments made post-petition and pre-confirmation shall be applied to the debt pursuant to the underlying loan documents. In the event of default under the Plan, the creditor may provide Designated Notice of such default to the Notice Parties, and if such default is not cured within fourteen (14) Business Days of the service of the Designated Notice, the creditor shall be authorized to exercise its rights under the loan documents and applicable state law. The creditor shall retain its Lien in the same priority and to the extent the Lien was valid and enforceable on the Petition Date until the claim is paid in full pursuant to the terms of this Plan. However, because the claim is crammed down to $0, the Lien shall be released to the Debtor upon Plan confirmation.

Debtor may prepay all or any portion of the Class 4 Claim at any time after the Effective Date of the Plan without premium, penalty, or additional fees. Any prepayment shall be

applied first to accrued interest and then to principal. Prepayment shall not affect the creditor's lien priority, which shall remain in full force and effect until the Claim is paid in full pursuant to the terms of the Plan.

This Class is impaired and entitled to vote on the Plan.

Nothing in this Plan shall constitute an admission as to the nature, the validity, or the amount of the claim. Debtor reserves the right to object to all claims.

4.5      **Class 5 (Claim of Maison Capital Group, Inc.)** This class consists of the claim of Maison Capital Group, Inc. which holds, or may hold at best, a fifth priority lien on all of Debtor's accounts receivables. This claim is junior on substantially all of Debtor's assets. Debtor has filed Proof of Claim No. 32 on behalf of the creditor for a debt owed of $80,000.00. This creditor's claim will accrue interest at the rate of 0.0%. This creditor's claim will accrue interest at the rate of 0.0%. This Claim shall be treated as a Class 10 general unsecured claim because the value of the creditor's pre-petition collateral is $0.00. No interest shall accrue on the claim post-petition. Any payments made post-petition and pre-confirmation shall be applied to the debt pursuant to the underlying loan documents. In the event of default under the Plan, the creditor may provide Designated Notice of such default to the Notice Parties, and if such default is not cured within fourteen (14) Business Days of the service of the Designated Notice, the creditor shall be authorized to exercise its rights under the loan documents and applicable state law. The creditor shall retain its Lien in the same priority and to the extent the Lien was valid and enforceable on the Petition Date until the claim is paid in full pursuant to the terms of this Plan. However, because the claim is crammed down to $0, the Lien shall be released to the Debtor upon Plan confirmation.

Debtor may prepay all or any portion of the Class 5 Claim at any time after the Effective Date of the Plan without premium, penalty, or additional fees. Any prepayment shall be applied first to accrued interest and then to principal. Prepayment shall not affect the creditor's lien priority, which shall remain in full force and effect until the Claim is paid in full pursuant to the terms of the Plan.

This Class is impaired and entitled to vote on the Plan.

Nothing in this Plan shall constitute an admission as to the nature, the validity, or the amount of the claim. Debtor reserves the right to object to all claims.

4.6      **Class 6 (Claim of Unique Funding Solutions)** This class consists of the claim of Unique Funding Solutions which holds, or may hold at best, a sixth priority lien on all of Debtor's accounts receivables. This claim is junior on substantially all of Debtor's assets. Debtor has filed Proof of Claim No. 33 on behalf of the creditor for a debt owed of $80,000.00. This creditor's claim will accrue interest at the rate of 0.0%. This Claim shall be treated as a Class 10 general unsecured claim because the value of the creditor's pre-petition collateral is $0.00. No interest shall accrue on the claim post-petition. Any payments made post-petition and pre-confirmation shall be applied to the debt pursuant to the underlying loan documents. In the event of default under the Plan, the creditor may provide Designated

Notice of such default to the Notice Parties, and if such default is not cured within fourteen (14) Business Days of the service of the Designated Notice, the creditor shall be authorized to exercise its rights under the loan documents and applicable state law. The creditor shall retain its Lien in the same priority and to the extent the Lien was valid and enforceable on the Petition Date until the claim is paid in full pursuant to the terms of this Plan. However, because the claim is crammed down to $0, the Lien shall be released to the Debtor upon Plan confirmation.

Debtor may prepay all or any portion of the Class 6 Claim at any time after the Effective Date of the Plan without premium, penalty, or additional fees. Any prepayment shall be applied first to accrued interest and then to principal. Prepayment shall not affect the creditor's lien priority, which shall remain in full force and effect until the Claim is paid in full pursuant to the terms of the Plan.

This Class is impaired and entitled to vote on the Plan.

Nothing in this Plan shall constitute an admission as to the nature, the validity, or the amount of the claim. Debtor reserves the right to object to all claims.

4.7     **Class 7 (Claim of Uncapped Solutions LLC)** – This class consists of the claim of Uncapped Solutions LLC. Although the underlying obligation represents an unsecured debt of the Debtor, the Debtor's principal is personally liable for this obligation. Accordingly, in order to protect the estate and facilitate the Debtor's reorganization, the claim is being treated as secured under the Plan. Debtor has filed Proof of Claim No. 29 on behalf of the creditor for a debt owed of $13,871.00. This creditor's claim will accrue interest at the rate of 0.0%. This Claim shall be paid in seventeen (17) installments of $250.00 each. Any remaining balance after the seventeenth installment shall be due as a balloon payment on May 1, 2028, at which time Class 7 shall be paid in full. The first installment shall be due on the first day of December 2026, the ninth (9th) month following the Effective Date of the Plan, and subsequent installments shall be due on the first day of each month thereafter until the Claim is satisfied in full. Any payments made post-petition and pre-confirmation shall be applied to the debt pursuant to the underlying loan documents. In the event of default under the Plan, the creditor may provide Designated Notice of such default to the Notice Parties, and if such default is not cured within fourteen (14) Business Days of the service of the Designated Notice, the creditor shall be authorized to exercise its rights under the loan documents and applicable state law. The creditor shall retain its Lien in the same priority and to the extent the Lien was valid and enforceable on the Petition Date until the claim is paid in full pursuant to the terms of this Plan. Once the claim is paid in full pursuant to the terms of the Plan, the creditor shall release its Lien to Debtor.

Debtor may prepay all or any portion of the Class 7 Claim at any time after the Effective Date of the Plan without premium, penalty, or additional fees. Any prepayment shall be applied first to accrued interest and then to principal. Prepayment shall not affect the

creditor's lien priority, which shall remain in full force and effect until the Claim is paid in full pursuant to the terms of the Plan.

This Class is impaired and entitled to vote on the Plan.

Nothing in this Plan shall constitute an admission as to the nature, the validity, or the amount of the claim. Debtor reserves the right to object to all claims.

4.8     **Class 8 (Claim of Gwinnett County Tax Commissioner)**  This class consists of the claim of Gwinnett County Tax Commissioner ("GCTC") which holds, or may hold at best, an eighth priority lien on all of Debtor's business inventory and equipment. This claim is junior on substantially all of Debtor's assets. Debtor has filed Proof of Claim No. 34 on behalf of the creditor for a debt owed of $19,338.94.[1] This creditor's claim will accrue interest at the rate of 10.50%. This Claim shall be treated as a Class 10 general unsecured claim because the value of the creditor's pre-petition collateral is $0.00. No interest shall accrue on the claim post-petition. Any payments made post-petition and pre-confirmation shall be applied to the debt pursuant to the underlying loan documents. In the event of default under the Plan, the creditor may provide Designated Notice of such default to the Notice Parties, and if such default is not cured within fourteen (14) Business Days of the service of the Designated Notice, the creditor shall be authorized to exercise its rights under the loan documents and applicable state law. The creditor shall retain its Lien in the same priority and to the extent the Lien was valid and enforceable on the Petition Date until the claim is paid in full pursuant to the terms of this Plan. However, because the claim is crammed down to $0, the Lien shall be released to the Debtor upon Plan confirmation.

Debtor may prepay all or any portion of the Class 8 Claim at any time after the Effective Date of the Plan without premium, penalty, or additional fees. Any prepayment shall be applied first to accrued interest and then to principal. Prepayment shall not affect the creditor's lien priority, which shall remain in full force and effect until the Claim is paid in full pursuant to the terms of the Plan.

This Class is impaired and entitled to vote on the Plan.

Nothing in this Plan shall constitute an admission as to the nature, the validity, or the amount of the claim. Debtor reserves the right to object to all claims.

4.9     **Class 9 (Capital Client Group, Inc.)**  This class consists of the claim of Capital Client Group, Inc., arising from the Debtor's obligation to make safe harbor contributions to its 401(k) plan. This claim is unsecured and junior to all other secured claims. Debtor has filed Proof of Claim No. 30 on behalf of the creditor for a debt owed of $95,000.00. This creditor's claim will accrue interest at the rate of 0%. This Claim shall be paid in sixty (60) installments of $1,583.33 each until Class 9 is paid in full. The first installment shall be due on the first day of December 2026, the ninth (9th) month following the Effective Date

---

[1] The total amount owed to GTCT is $26,403.38. However, GTCT recorded a post-petition lien in the amount of $7,064.44. Accordingly, the total claim amount is reduced by this lien, resulting in an adjusted balance of $19,338.94.

of the Plan, and subsequent installments shall be due on the first day of each month thereafter until the Claim is satisfied in full. Any payments made post-petition and pre-confirmation shall be applied to the debt pursuant to the underlying loan documents. In the event of default under the Plan, the creditor may provide Designated Notice of such default to the Notice Parties, and if such default is not cured within fourteen (14) Business Days of the service of the Designated Notice, the creditor shall be authorized to exercise its rights under the loan documents and applicable state law. The creditor shall retain its Lien in the same priority and to the extent the Lien was valid and enforceable on the Petition Date until the claim is paid in full pursuant to the terms of this Plan. Once the claim is paid in full pursuant to the terms of the Plan, the creditor shall release its Lien to Debtor.

Debtor may prepay all or any portion of the Class 9 Claim at any time after the Effective Date of the Plan without premium, penalty, or additional fees. Any prepayment shall be applied first to accrued interest and then to principal. Prepayment shall not affect the creditor's lien priority, which shall remain in full force and effect until the Claim is paid in full pursuant to the terms of the Plan.

This Class is impaired and entitled to vote on the Plan.

Nothing in this Plan shall constitute an admission as to the nature, the validity, or the amount of the claim. Debtor reserves the right to object to all claims.

4.10   **Class 10 (Claims of general, unsecured claims of creditors)** – All creditors holding general, unsecured, non-priority, undisputed, unsecured claims will be paid a pro rata share of the monthly amount of $0. No interest will be paid on Class 11 Claims. If the Plan is Confirmed under Bankruptcy Code § 1191(a), Debtor shall pay undisputed claims as provided herein and disputed claims when resolved or concluded in accordance with Article IX of this Plan. If the Plan is confirmed under Bankruptcy Code § 1191(b), Class 11 will be treated the same as if the Plan was confirmed under Bankruptcy Code § 1191(a). Debtor's revenue fluctuates and funds after payment of monthly Plan payments and expenses for continuation, preservation, and operation of Debtor's business will need to accumulate to allow payments provided under the Plan during the months when Debtor's income is lower than its anticipated average monthly income.

Debtor may prepay all or any portion of the Class 10 Claim at any time after the Effective Date of the Plan without premium, penalty, or additional fees. Any prepayment shall be applied first to accrued interest and then to principal. Prepayment shall not affect the creditor's lien priority, which shall remain in full force and effect until the Claim is paid in full pursuant to the terms of the Plan.

This Class is impaired and entitled to vote on the Plan.

Nothing in this Plan shall constitute an admission as to the nature, the validity, or the amount of the claim. Debtor reserves the right to object to all claims.

4.11     **Class 11 (Equity Interests)** – This class consists of the equity interest of the shareholders of Debtor. The shareholders of this class shall retain their ownership interest in Debtor and the Reorganized Debtor.

On the confirmation date, all assets of the Debtor and all property of Debtor's Estate will be vested in the Debtor, free and clear of all liens, claims, and encumbrances, except for the liens, claims, and encumbrances specifically continued by way of this Plan.

Attached as Exhibit "B" is Debtor's budget, and attached as Exhibit "C" is a summary of payments to be made under the Plan. Attached as Exhibit "D" is a list of general, non-priority, claims with the total amount to be paid to each creditor under the Plan.

**ARTICLE V**
**MEANS FOR EFFECTUATING THE PLAN**

5.1     **Implementation of the Plan.** Debtor will be charged with administration of the Case and payments provided under the Plan. Debtor will be authorized and empowered to take such actions as required to effectuate the Plan.

5.2     **Funding the Plan.** The source for payments under the Plan will be from funds generated from Debtor's continued operation of its business. as well as the proceeds from any other Assets available to fund the Plan, including recoveries from any Estate Causes of Action.

5.3     **Ability to Fund the Plan.** Debtor has provided its projected gross monthly income, projected disposable monthly income, and plan payment information in the exhibits attached hereto. Debtor's anticipated gross monthly income is based on its gross income received in the year 2025 and operating expenses are based on Debtor's analyses of its 2025 expenses and anticipated necessary operating expenses.

5.4     **Preservation of Causes of Action.** In accordance with section 1123(b)(3) of the Bankruptcy Code, Debtor will retain and may (but is not required to) enforce all Retained Actions. After the Effective Date, Debtor shall have the right to bring, settle, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing), without further approval of the Bankruptcy Court. Debtor (or any successors) may purse such Retained Actions so long as it is the best interests of Debtor (or any successors holding such rights of action). The failure of Debtor to specifically list any claim, right of action, suit, proceeding or other Retained Action in this Plan does not, and will not be deemed to, constitute a waiver or release by Debtor of such claim, right of action, suit, proceeding or other Retained Action, and Debtor will retain the right to pursue such claims, rights of action, suits, proceedings and other Retained Actions in its discretion and, accordingly, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, or estoppel (judicial, equitable, or otherwise) will apply to such claim, right of action, suit, proceeding or other Retained Actions upon or after the confirmation or consummation of this Plan. Debtor reserves all causes of actions for breach of any former or now existing agreement or otherwise. Debtor specifically reserves any cause of action against any of Debtor's account debtors related to underpayment or non-payment of any fees, or other monies or

receivables due. The Plan shall not be deemed a waiver of any right of Debtor to collect any receivables or right to payment under any applicable laws. Debtor expressly reserves the right to exercise any and all remedies available to Debtor regarding its accounts receivable or rights to payment at law or in equity, at such time or times as Debtor from time to time may elect. Any failure by Debtor to assert or set forth the occurrence of any other default or events of default which may have occurred shall not be deemed to be a waiver, release or estoppel of such other default or event of default. Debtor hereby expressly reserves the right to declare any such other default or event of default and to take such other action as Debtor may be entitled to take or bring under applicable law. This Plan is filed with a full reservation of rights.

5.5     **Effectuating Documents, Further Transactions.** Debtor is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such action as may be necessary, desirable or appropriate to effectuate and further evidence the terms and conditions of this Plan or to otherwise comply with applicable law.

5.6     **Reports.** Debtor will file all post-confirmation reports required by the United States Trustee's office or by the Subchapter V Trustee. Debtor will also file the necessary final reports and may apply for a final decree as soon as practicable after substantial consummation and the completion of the claims analysis and the objection process.

5.7     **Exemption from Certain Transfer Taxes and Recording Fees.** Pursuant to 11 U.S.C. § 1146(a), O.C.G.A. §48-6-65(a)(2), Ga. Comp. R. & Regs. R. 560-11-8.14 and any other applicable laws, codes or regulations, any transfers from Debtor to any other Person or entity pursuant to or in contemplation of this Plan, or any agreement regarding the transfer of title to or ownership of any of Debtor's real or personal property will not be subject to any document recording tax, stamp tax, conveyance fee, sales tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee or other similar tax or governmental assessment. Without limitation of the foregoing, the Confirmation Order may direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

5.8     **Unclaimed Property.** Unclaimed Property is treated as follows:
Unclaimed Property shall be deposited in the Unpaid Claims Reserve to be held in trust for the benefit of the Holders of Allowed Claims entitled thereto under the terms of the Plan. For a period of six (6) months following the first Distribution or ninety (90) days after a Distribution is made to a Creditor on account of which Unclaimed Property first results (said period being hereinafter referred to as the "Claiming Period"), Unclaimed Property shall be held in the Unpaid Claims Reserve solely for the benefit of the Holders of Allowed Claims which have failed to claim such property. During the Claiming Period, Unclaimed Property due to the Holder of an Allowed Claim shall be released from the Unpaid Claims Reserve and delivered to such Holder upon presentation of proper proof by such Holder of its

entitlement thereto. In the event that there is Unclaimed Property in the Unpaid Claims Reserve with regard to any Claim, the Debtor shall, until such Unclaimed Property is claimed or the Claiming Period with regard to the Holder of such Claim has expired, make all subsequent Distributions due with regard to such Claim to the Unpaid Claims Reserve. After the Claiming Period with regard to such Holder has expired, no subsequent Distributions shall be made on account of such Claim, and such Claim shall be treated as being disallowed, waived, and satisfied. At the end of the Claiming Period, the Holder of an Allowed Claim theretofore entitled to Unclaimed Property shall cease to be entitled thereto. The Unpaid Claims Reserve may be maintained in an interest-bearing account. No Holder entitled to funds from the Unpaid Claims Reserve shall be entitled to interest with regard to the amount due.

**ARTICLE VI**
**SUBCHAPTER V TRUSTEE**

The United States Trustee appointed the Subchapter V Trustee in this Case to perform the duties provided by Section 1183(b) of the Bankruptcy Code, inclusive of facilitating the development of a consensual plan. As to continued performance, the Subchapter V Trustee's services shall terminate upon "substantial consummation" of the Plan, as defined by Section 1101(2) of the Bankruptcy Code if the Plan is confirmed under Section 1191(a) or 1191(b) of the Bankruptcy Code. Debtor shall directly make all payments provided by the Plan, including, but not limited to, the first payments required for substantial consummation of the Plan.

The Subchapter V Trustee shall be entitled to apply for reasonable compensation for fees and expenses as provided by Sections 330 and 503(b)(3) of the Bankruptcy Code. Unless otherwise agreed to by the Subchapter V Trustee, Debtor shall pay any unpaid fees and expenses to the Subchapter V Trustee on the later of the Effective Date or the day after the order on the Subchapter V Trustee's application for compensation becomes a Final Order.

**ARTICLE VII**
**MANAGEMENT OF THE POST-CONFIRMATION DEBTOR**

The officers and directors of the Debtor serving on the Confirmation Date may continue to serve in such capacities pending further action of the Debtor's shareholders in accordance with applicable non-bankruptcy laws. At present, the following shareholders of Debtor serve as an officer and employee:

(a) Greg Weigle, CEO and Shareholder.
(b) Tammy Shearer, Shareholder.

**ARTICLE VIII**
**EFFECT OF CONFIRMATION**

8.1    **Effect of Confirmation.** Except as otherwise provided for in the Plan or in the Confirmation Order, upon Confirmation, this Plan shall be binding on all parties in interest, regardless of whether the Claims or Interests of such parties in interest are impaired or

unimpaired and regardless of whether the holders of such Claims or Interests have accepted the Plan. The Debtor will not have any liabilities except those expressly assumed under this Plan. Except as otherwise explicitly provided in the Plan, upon the Court's entry of the Confirmation Order, all property compromising the Estate (including Retained Actions, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall revest in Debtor free and clear of all Claims, Liens, charges, encumbrances, rights and interests of creditors and equity security holders, except as specifically provided in the Plan. As of the earlier of the Effective Date and the entry of a Final Decree, Debtor may operate its business and use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and Confirmation Order and, in the case of a Plan confirmed under § 1191(b), the supervision of the Subchapter V Trustee.

8.2    **Discharge of Debtor.**

(a)    **Discharge if the Plan is Confirmed Under Section 1191(a).** Pursuant to Section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in the Plan or in the Confirmation Order, the Distributions and rights that are provided in the Plan shall be in complete satisfaction, discharge, and release of all Claims and Causes of Action against Debtor, whether known or unknown, including any and all liabilities of Debtor, Liens, on Debtor's assets, obligations of Debtor, rights against Debtor, and Interests in Debtor or its Estate that arose prior to the Effective Date regardless of whether a claimant accepted or rejected the Plan.

(b)    **Discharge if the Plan is Confirmed Under Section 1191(b).** If the plan is confirmed under Section 1191(b) of the Bankruptcy Code, as soon as practicable after completion by Debtor of the payments expressly provided for under this Plan due within the first three (3) years of the plan, or such longer period not to exceed five (5) years as the Court may fix within the Confirmation Order, the Court shall grant Debtor a discharge of all debts.

8.3    **Injunction.** Upon Debtor's final payment to creditors under the Plan, except as provided for in the Plan, the Confirmation Order shall act as a permanent injunction against any Person commencing or continuing any action to collect, offset, or recover any Claim or Cause of Action except as provided for in the Plan against (1) Debtor or (2) against any Property of Debtor. Such injunction shall survive closure of the Bankruptcy Case, and this Court shall retain jurisdiction to enforce such injunction. During the term of the Plan, any creditor with an Allowed Claim may file an appropriate motion with the Bankruptcy Court to enforce any provision of the Plan.

## <u>ARTICLE IX - OBJECTIONS TO CLAIMS AND INTERESTS</u>

9.1    **Objections to Claims.** Objections, if any, to the validity and/or amount of Claims and Interests shall be filed by the Debtor with the Bankruptcy Court and shall be served upon each holder of a Claim or Interest to which objection is made as soon as reasonably practicable. In no event shall such objections be filed (a) with respect to administrative

expenses or priority claims later than thirty (30) calendar days after the Confirmation Date, or (b) with respect to all other claims and interests later than sixty (60) calendar days after the Confirmation Date, unless the Bankruptcy Court orders otherwise by appropriate order entered prior to such date. The failure to object to any claim or interest prior to the commencement of the hearing on confirmation of this Plan for the purpose of voting shall not be deemed to be a waiver of the right to object thereafter to such claim or interest in whole or in part for the purpose of distribution.

9.2    **Handling of Disputed Claims.** In the event that an objection to a Claim is pending so that the Claim is a Disputed Claim, Debtor shall not make any distribution on account of the Claim until the claim is an Allowed Claim. Once a Disputed Claim becomes an Allowed Claim, Debtor shall pay on account of such Allowed Claim all Distributions to which such Allowed Claim would have been entitled had the Claim been an Allowed Claim which such Distributions were provided.

## <u>ARTICLE X - JURISDICTION OF THE COURT</u>

The United States Bankruptcy Court shall retain jurisdiction after confirmation of the Plan for all matters related to the Case and for the following purposes:

1.    The classification and allowability of claims and interests and the re-examination of claims which have been allowed for purposes of voting, and the determination of such objections as may be filed to the claims. The failure by Debtor to object to or examine any claim for the purpose of voting, shall not be deemed to be a waiver of the Debtor's right to object to or re-examine the claim in whole or in part.

2.    The determination of all questions and disputes regarding title to the assets of the Estate, and the determination of all Causes of Action, controversies, disputes, or conflicts, whether or not subject to action pending as of the date of Confirmation, between the Debtor and any other party, including, but not limited to, any right of Debtor to recover assets pursuant to provisions of Title 11 of the United States Bankruptcy Code.

3.    The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in this Plan or the order of confirmation as may be necessary to carry out the purposes and intent of this Plan.

4.    The Modification of this Plan after confirmation pursuant to the Federal Rules of Bankruptcy Procedure and/or Title 11 of the United States Bankruptcy Code.

5.    To enforce and to interpret the terms and conditions of this Plan.

6.    Entry of an order, including injunctions, necessary to enforce the titles, rights, and powers of the Debtor, and to impose such limitations, restrictions, terms and conditions of such titles, rights or powers, as this Court may deem necessary.

7.    The determination of tax liabilities of Debtor's Estate.

8.      The implementation of the provisions of the Plan and entry of orders in aid of confirmation of it.

## ARTICLE XI - MODIFICATION OF THE PLAN

The Plan may be modified before and after confirmation pursuant to and as provided for under the law including as allowed in Section 1193 of the Bankruptcy Code.

## ARTICLE XII - REQUEST FOR CONFIRMATION PURSUANT TO § 1191 (b)

In the event that all requirements for confirmation are met except for the provisions of Section 1191(a) of the Bankruptcy Code, Debtor requests that the Plan be confirmed pursuant to Section 1191(b) of the Bankruptcy Code.

RESPECTFULLY SUBMITTED this day, November 5, 2025.


*/s/ Michael B. Pugh*
**MICHAEL B. PUGH**
Georgia State Bar No. 150170
**CHARLES TAYLOR KOGAN**
Georgia State Bar No. 184723


For the firm of
THOMPSON, O'BRIEN, KAPPLER & NASUTI, P.C.
2 Sun Court, Suite 400
Peachtree Corners, Georgia 30092
Telephone: (770) 925-0111
E-mail: mpugh@tokn.com; tkogan@tokn.com
*Attorneys for ThermoPro, Inc.*

**EXHIBIT "A"**
**LIQUIDATION ANALYSIS**

ASSETS:

| | | |
|---|---|---:|
| Bank Accounts as of October 1, 2025 | $ | 38,147.00 |
| Accounts Receivable | $ | 186,875.00 |
| Office equipment, computers, furnishings | $ | 5,500.00 |
| Vehicles/ Equipment | $ | 62,700.00 |
| Goodwill, Customer Lists, Purchased Contracts | $ | - |
| | | |
| Total Proceeds: | $ | 293,222.00 |
| Total less Cash: | $ | 255,075.00 |

LIABILITIES:

| | | |
|---|---|---:|
| Secured Creditors (based on estimates and claims filed by creditors) | $ | 756,107.74 |
| Priority Creditors - TIAA Admin Claim | $ | 287,328.74 |
| Chapter 7 Trustee Fees – (calculated pursuant to 11 U.S.C. § 326a) | $ | 16,003.75 |
| Chapter 7 Broker's Fees (fifteen percent of the gross sales price of assets) | $ | 38,261.25 |

Total Liabilities –

| | | |
|---|---|---:|
| Before Any Distributions to Non-Priority Unsecured Creditors | $ | 1,097,701.48 |
| Available Funds for Distribution to Unsecured Creditors - | $ | 0 |
| Percentage Distribution to Unsecured Creditors- | | 0% |

## EXHIBIT "B"
## PROJECTED MONTHLY BUDGET OF THERMOPRO, INC.

**Cost of Goods Sold**

| | |
|---|---:|
| Custom Cost of Goods Sold | 2,500.00 |
| Proprietary Cost of Goods Sold | 23,958.00 |
| Payroll and Benefits- Custom | 2,875.00 |
| Payroll and Benefits- Proprietary | 20,958.00 |
| **Total Cost of Goods Sold** | **50,291.00** |

| | |
|---|---:|
| **Gross Profit** | **61,709.00** |

**Operating Expenses**

| | |
|---|---:|
| Sales & Marketing Payroll and Benefits | 9,000.00 |
| Dues & Subscriptions | 1,000.00 |
| Internet Adv/Development | 2,000.00 |
| Website Design & Maintenance | 1,000.00 |
| Admin Payroll and Benefits | 17,333.00 |
| Insurance | 1,600.00 |
| Legal & Professional | 2,000.00 |
| Office Maintenance and Supplies | 900.00 |
| Property Tax Expense | 250.00 |
| Rent - Building | 15,000.00 |
| Service Charges | 1,200.00 |
| Software Maintenance | 500.00 |
| Telephone | 800.00 |
| Utilities | 1,000.00 |
| **Total Operating Expenses** | **53,583.00** |

| | |
|---|---:|
| **Operating Income** | **8,126.00** |

**Other Income / (Expense)**

| | |
|---|---:|
| Thermoforming Commissions | 2,300.00 |
| Interest/Misc. Income | 300.00 |
| Interest Expense | (2,000) |
| New Space Buildout/Moving | (2,400.00) |
| **Total Other Income / (Expense)** | **(1,800.00)** |

| | |
|---|---:|
| **Net Income** | **6,326.00** |

**EXHIBIT "C"**
**SUMMARY OF ESTIMATED CHAPTER 11 PAYMENTS**

| Class | Monthly Payment Summary | Proposed First Payment Date | Proposed Last Payment Date |
|---|---|---|---|
| Administrative Claims for Attorney and Trustee's fees and expenses after Confirmation Subchapter V | TBD | April 2026 | November 2026 |
| Administrative Claim for Lease Rejection Damages | TBD | December 2026 | November 2031 |
| Class 1 Claims of United Bank | $1,800.00, stepping to $2,000.00 in June 2028, stepping to $2,500.00 in December 2031 | December 2026 | August 2035 |
| Class 2 Claims of the U.S. Small Business Administration | $1,050.00 | November 2030 | June 2037 |
| Class 3 Claims of Revenued LLC | $0.00 | N/A | N/A |
| Class 4 Claims of Rapid Finance LLC | $0.00 | N/A | N/A |
| Class 5 Claims of Maison Capital Group, Inc, | $0.00 | N/A | N/A |
| Class 6 Claims of Unique Funding Solutions | $0.00 | N/A | N/A |
| Class 7 Claims of Uncapped Solutions LLC | $250.00 | December 2026 | May 2028 |
| Class 8 Claims of Gwinnett County Tax Commissioner | $0.00 | N/A | N/A |
| Class 9 Claims of Capital Client Group, Inc. | $1,583.33 | December 2026 | November 2031 |
| Class 10 Claims of Unsecured Creditors | $0.00 | N/A | N/A |
| Class 11 Equity Interests | Owners will retain | | |

The source of funds for payment of claims on Effective Date: Funds accumulated from post-petition operations. Class Numbers 11, 12, and 13 may actually be unsecured claims due to the priority of their secured status. Even so, Debtor has placed the creditors in their own classes since they have filed claims asserting a secured status; however, the payment terms for the claims are the same as the payment terms for the unsecured non-priority claims provided in Class 13.

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE:<br>**THERMOPRO, INC.**<br><br>                                        **Debtor.** | **CASE NO. 25-53612-BEM**<br>**CHAPTER 11 (SUBCHAPTER V)** |

## CERTIFICATE OF SERVICE

This is to certify that I have on this day electronically filed the foregoing Application to Employ Equipment Sales Broker using the Bankruptcy Court's Electronic Case Filing Program, which sends a notice of this document and an accompanying link to this document to the following parties who have appeared in this case under the Bankruptcy Court's Electronic Case Filing program:

Gary M. Murphey
Resurgence Financial Services, LLC
3330 Cumberland Blvd.
Suite 500
Atlanta, GA 30339

I further certify that on this day I caused a copy of this document to be served via U.S. First Class Mail, with adequate postage prepaid on the Debtor at the following address:

ThermoPro, Inc.
1600 Cross Pointe Way, Suite D.
Duluth, GA 30097

All parties on the mailing matrix.

RESPECTFULLY SUBMITTED this day, November 5, 2025.

*/s/ Michael B. Pugh*
**MICHAEL B. PUGH**
Georgia State Bar No. 150170
**CHARLES TAYLOR KOGAN**
Georgia State Bar No. 184723

For the firm of
THOMPSON, O'BRIEN, KAPPLER & NASUTI, P.C.
2 Sun Court, Suite 400
Peachtree Corners, Georgia 30092
Telephone: (770) 925-0111
E-mail: mpugh@tokn.com; tkogan@tokn.com
*Attorneys for ThermoPro, Inc.*